[No. A050322. First Dist., Div. Two. Dec. 18, 1990.]

RAYMOND B. FARNOW, Petitioner, v.
THE SUPERIOR COURT OF SAN MATEO COUNTY,
Respondent;
SAN MATEO COUNTY GRAND JURY, Real Party in Interest.

**COUNSEL**

Kenneth M. Dickerson and Jean B. Savaree for Petitioner.

No appearance for Respondent.

Thomas F. Casey III, County Counsel, and Milton H. Mares, Deputy County Counsel, for Real Party in Interest.

**OPINION**

**KLINE, P. J.**—This petition for writ of prohibition arises from petitioner's assertion of the right to counsel at his appearance before a civil session of

the San Mateo County Grand Jury. Prior to 1988, the law clearly did not recognize any such right. The question in this case is whether the right was created by 1988 amendments to Penal Code section 939.

## STATEMENT OF THE CASE

On July 2, 1990, petitioner Raymond B. Farnow, commissioner of the San Mateo County Harbor District, was served with a subpoena requiring him to appear on July 11 before real party in interest, the San Mateo County Grand Jury. The grand jury refused petitioner's request to have an attorney present during his testimony. On July 12, petitioner presented to the superior court an application for an ex parte order staying his appearance pending a hearing on an order to show cause why his attorney should not be allowed to attend the session. Real party in interest opposed the application, which was denied after oral argument in chambers. Petitioner's appearance before the grand jury was postponed by agreement until July 25 to allow filing of the present petition for writ of prohibition.

On July 17, petitioner filed his request for stay and petition for writ of prohibition in this court. On July 18, we issued an order prohibiting real party in interest from compelling petitioner's appearance and testimony without the presence of his attorney pending determination of the petition and on September 7 issued an order to show cause why a peremptory writ of prohibition should not issue. We now deny the writ.

## DISCUSSION

■ In this case we are called upon to determine the effect of an amendment that appears on its face to have transformed a statute preserving the privacy of all sessions of the grand jury by allowing only specified persons to be present into a statute ensuring such privacy only for *criminal* sessions of the grand jury. While the specific question petitioner raises is whether a witness before a civil grand jury may be represented by counsel, our answer must necessarily be broader: Since the statute in question makes no reference to attorneys in particular, petitioner's right to representation depends on our determining that Penal Code section 939[1] does not exclude members of the public from civil grand jury sessions.

Prior to its amendment in 1988, section 939 provided as follows: "No person other than those specified in Article 3 (commencing with Section 934), and in Sections 939.1 and 939.11 is permitted to be present during the session of the grand jury except the members and witnesses actually under

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

examination. No person other than those specified in Section 939.11 shall be permitted to be present during the expression of the opinions of the grand jurors, or the giving of their votes upon any matter before them." (Added by Stats. 1959, ch. 501, § 2, amended by Stats. 1986, ch. 357, § 2.)[2]

In 1988, section 939 was amended to its present form primarily by addition of the following language that is italicized: "No person other than those specified in Article 3 (commencing with Section 934), and in Sections 939.1 and 939.11, *and the officer having custody of a prisoner witness while the prisoner is testifying,* is permitted to be present during the *criminal sessions* of the grand jury except the members and witnesses actually under examination. *Members of the grand jury who have been excused pursuant to Section 939.5 shall not be present during any part of these proceedings. No persons other than grand jurors* shall be permitted to be present during the expression of the opinions of the grand jurors, or the giving of their votes on any *criminal or civil* matter before them."[3]

Petitioner contends that because section 939 now provides for exclusion of all but the specified persons from *criminal* sessions rather than all sessions of the grand jury, it follows that attorneys may be present at *civil* sessions. Real party in interest counters that the Legislature did not mean to make civil sessions of the grand jury open to the public but only to provide for the presence of "the officer having custody of a prisoner witness while the prisoner is testifying." (§ 939.) Real party infers that the word "criminal" in the first sentence of section 939 signifies no more than that a prisoner witness would be testifying in a criminal rather than a civil proceeding.

Our consideration of this issue is guided by well established principles of statutory construction. ■ On the one hand, "when statutory language is clear and unambiguous, 'there is no need for construction, and courts should not indulge in it.'" (*Hutnick* v. *United States Fidelity & Guaranty Co.* (1988) 47 Cal.3d 456, 464 [253 Cal.Rptr. 236, 763 P.2d 1326], quoting *Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561

---

[2] The provisions of article 3 authorize the presence, in certain circumstances, of the judge, district attorney, county counsel, special counsel and special investigators, interpreters and stenographic reporters. (§§ 934, 935, 936, 936.5, 936.7, 938.) Section 939.1 provides that the court, upon joint request of the grand jury and attorney general or district attorney, may order grand jury sessions open to the public in certain circumstances. Section 939.11 authorizes the presence at grand jury sessions of interpreters for grand jurors with hearing, sight or speech disabilities when the court, upon request of the juror, finds such interpreters to be necessary.

[3] Section 939.5 requires grand jurors to retire from consideration of a charge if they will not be able to act impartially and without prejudice to the substantial rights of the party at issue. The provision in section 939 referring to this statute is of no consequence to the issue before us.

P.2d 1148]; *People* v. *Martinez* (1987) 194 Cal.App.3d 15, 19 [239 Cal.Rptr. 272].) A court's task is to "ascertain and declare what is in terms or in substance contained [in a statute], not to insert what has been omitted, or to omit what has been inserted" (Code Civ. Proc., § 1858); a court may not rewrite a law, supply an omission or give words an effect different from the plain and direct import of the terms used. (*Langsam* v. *City of Sausalito* (1987) 190 Cal.App.3d 871, 877 [235 Cal.Rptr. 672]; see also, *Napa Valley Wine Train, Inc.* v. *Public Utilities Com.* (1990) 50 Cal.3d 370, 381 [267 Cal.Rptr. 569, 787 P.2d 976]; *In re Marriage of Wight* (1989) 215 Cal.App.3d 1590, 1596 [264 Cal.Rptr. 508].) ■ "In construing the words of a statute . . . to discern its purpose, the provisions should be read together; an interpretation which would render terms surplusage should be avoided, and every word should be given some significance, leaving no part useless or devoid of meaning." (*City & County of San Francisco* v. *Farrell* (1982) 32 Cal.3d 47, 54 [184 Cal.Rptr. 713, 648 P.2d 935].)

■ On the other hand, "[t]he meaning of the words of a statute or, to use the alternative approach favored by many courts, the intent of the Legislature, can only be determined with reference to the context in which the words are used; that is, with reference to such purpose as may be discerned from examining the entire enactment of which the words are part . . . . Thus, 'in analyzing the legislative usage of certain words, " 'the objective sought to be achieved by a statute as well as the evil to be prevented is of prime consideration . . . .' " [Citations omitted.]' . . . The courts resist blind obedience to the putative 'plain meaning' of a statutory phrase where literal interpretation would defeat the Legislature's central objective." (*Leslie Salt Co.* v. *San Francisco Bay Conservation etc. Com.* (1984) 153 Cal.App.3d 605, 614, fns. omitted [200 Cal.Rptr. 575].) ■ " '[E]very statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect. [Citations.]' " (*Landrum* v. *Superior Court* (1981) 30 Cal.3d 1, 14 [177 Cal.Rptr. 325, 634 P.2d 352]; *Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) ■ "The words of a statute will not be literally construed if this would cause an absurd result, or if it would fail to give effect to the manifest purposes of the statute in light of its legislative history." (*Granberry* v. *Islay Investments* (1984) 161 Cal.App.3d 382, 388 [207 Cal.Rptr. 652]; see also, *DeYoung* v. *City of San Diego* (1983) 147 Cal.App.3d 11, 18 [194 Cal.Rptr. 722].) ■ Finally, legislative history, including the reports of legislative committees and commissions, may be considered in determining the purpose and meaning of a statute. (*Hutnick* v. *United States Fidelity & Guaranty Co.*, *supra*, 47 Cal.3d at p. 465, fn. 7; *People* v. *Martinez*, *supra*, 194 Cal.App.3d at p. 22.)

■ Were we to consider only the literal words of section 939, we would have to accept petitioner's view: The structure of the first sentence of

section 939 does not support real party's suggestion that the term "criminal" applies solely to the provision for the presence of custodial officers and not to the other categories of people enumerated in the statute,[4] and by providing that only certain parties may be present at *criminal* sessions of the grand jury, the statute clearly implies that there are no limits on who may be present at civil sessions. This reading of the first provision of section 939 is bolstered by the fact that the 1988 amendment specifically inserted the word "criminal" into the statute where it previously referred simply to the "session" of the grand jury and so encompassed both criminal and civil proceedings. That the Legislature intended to add a distinction between criminal and civil sessions to the statute is further suggested by the changed reference in the last provision from "any matter" to "any criminal or civil matter." When considered together with the first sentence, this change appears to clarify that only grand jurors may be present during the deliberations of *any* grand jury even though attendance is otherwise limited only in criminal sessions.

Despite the apparent import of the addition of the word "criminal" to section 939, however, the effect of a literal interpretation of this statute—to make civil sessions of the grand jury open to the public—would work so profound a change in the nature of grand jury proceedings that we must hesitate to adopt it. As our Supreme Court stated in considering an issue regarding disclosure of evidence reviewed by a grand jury, "[t]he secrecy of all grand jury proceedings is 'deeply rooted in our traditions . . . .'"

---

[4] Indeed, the legislative history of the 1988 amendments demonstrates that the word "criminal" was adopted separately from rather than as part of the provision for custodial officers. Section 939 was amended in 1988 by two bills, Senate Bill No. 2753 and Assembly Bill No. 3141. Assembly Bill No. 3141, as originally proposed on February 9, 1988, amended the first sentence of the statute to read: "No person other than those specified in Article 3 (commencing with Section 934), in Sections 939.1 and 939.11, *the investigating officer and the officer having custody of a prisoner witness while the prisoner is testifying*, is permitted to be present during the session of the grand jury except the members and witnesses actually under examination." The bill was amended on May 17 to delete the provision regarding investigating officers and filed on August 15. (Stats. 1988, ch. 415.) Notably, this bill did *not* contain the word "criminal."

Meanwhile, Senate Bill No. 2753 as originally proposed on February 19, 1988, provided as follows: "No person other than those specified in Article 3 (commencing with Section 934), and in Sections 939.1 and 939.11 is permitted to be present during the *criminal sessions* of the grand jury except the members and witnesses actually under examination . . . . No person other than those specified in Section 939.11 shall be permitted to be present during the expression of the opinions of the grand jurors, or the giving of their votes upon any *criminal or civil* matter before them." (§ 9, italics added.) This bill specifically introduced a distinction between criminal and civil sessions without reference to the custodial officer of a prisoner witness. On August 22, Senate Bill No. 2753 was amended in the Assembly to add this latter provision; it was filed in its present form on September 26. (Stats. 1988, ch. 1297, § 6.) It is thus apparent that whatever the legislative intent behind the newly added distinction between criminal and civil sessions, it was separate from that behind the provision for presence of the custodial officer.

(*McClatchy Newspapers* v. *Superior Court* (1988) 44 Cal.3d 1162, 1173 [245 Cal.Rptr. 774, 751 P.2d 1329], quoting *Illinois* v. *Abbott & Associates, Inc.* (1983) 460 U.S. 557, 572 [75 L.Ed.2d 281, 293, 103 S.Ct. 1356].) Indeed, this tradition dates to the 12th century, explained as a requirement to prevent the escape of offenders; in the 17th century, secrecy came to be used to protect grand jurors from the influence of the king and "for the most part, grand jury proceedings since that time have been closed to the public and records of such proceedings have been kept from the public eye." (*McClatchy Newspapers* v. *Superior Court, supra*, 44 Cal.3d at p. 1173.) "A number of interests are served by the 'strong historic policy of preserving grand jury secrecy' (*United States* v. *Sells Engineering, Inc.* (1983) 463 U.S. 418, 428 [77 L.Ed.2d 743, 103 S.Ct. 3133]). As described by the United States Supreme Court, these are: 'First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There would also be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.' " (*McClatchy Newspapers* v. *Superior Court, supra*, 44 Cal.3d at pp. 1174-1175, quoting *Douglas Oil Co.* v. *Petrol Stops Northwest* (1979) 441 U.S. 211, 219 [60 L.Ed.2d 156, 165, 9 S.Ct. 1667].)

The need for grand jury secrecy is not limited to criminal sessions. ■ The California grand jury is empowered to act in three basic areas: determining whether criminal indictments should be returned (§ 917), determining whether to present formal accusations of misconduct against public officials requesting their removal from office (§ 922, see Gov. Code, § 3060 et seq.), and acting as watchdog of the public by investigating and reporting upon the affairs of local government (e.g., §§ 888, 919, 920, 925, 925a, 927, 928, 933.1, 933.5, 933.6). (*McClatchy Newspapers* v. *Superior Court, supra*, 44 Cal.3d at p. 1170; *Unnamed Minority Members etc. Grand Jury* v. *Superior Court* (1989) 208 Cal.App.3d 1344, 1347 [256 Cal.Rptr. 727]; *People* v. *Cohen* (1970) 12 Cal.App.3d 298, 311 [90 Cal.Rptr. 612].) "Of these functions, the watchdog role is by far the one most often played by the modern grand jury in California." (*McClatchy Newspapers* v. *Superior Court, supra*, 44 Cal.3d at p. 1170.) *McClatchy* held that the importance of secrecy is as vital in the context of a watchdog investigation as in that of a criminal indictment. "Compared with indictment proceedings, the efficacy and credibility of watchdog investigations no less require that witnesses testify without fear of reproach by their peers or their superiors. Though the

watchdog investigation and report serve a different social purpose than the criminal indictment, eliciting candid testimony is obviously critical to both functions of the grand jury." (*Id.*, at p. 1175.)

■ That grand jury sessions, civil and criminal, are intended to be closed to the public is apparent from even a cursory review of the relevant statutes. Under section 915, once a grand jury is impaneled, sworn and charged, "it shall retire to a *private* room, except when operating under a finding pursuant to Section 939.1 . . . ." (Italics added.) Aside from section 939, attendance at sessions of the grand jury is limited by section 934, which prohibits presence of the judge and county counsel as to civil matters unless the grand jury asks for advice. Grand jurors take an oath not to disclose any evidence brought before the grand jury, anything said by the grand jurors or the manner in which the grand jurors vote. (§ 911.) Statutes prohibit and criminalize willful disclosure of evidence adduced before the grand jury (§ 924.1, 924.2), and willful recording of grand jury proceedings without the knowledge and consent of the grand jury. (§ 891.)

The existence of these provisions contemplating privacy for grand jury sessions casts strong doubt on any assumption that the Legislature meant its amendment of section 939 to open civil sessions to the public. In particular, such an interpretation of section 939 would be inconsistent with section 939.1, which specifically provides for sessions to be open to the public when, upon request of the grand jury together with the district attorney or attorney general, the court finds that the subject matter of the investigation "affects the general public welfare, involving the alleged corruption, misfeasance, or malfeasance in office or dereliction of duty of public officials or employees or of any person allegedly acting in conjunction or conspiracy with such officials or employees in such alleged acts." The existence of this specific provision for open sessions only upon court order obviously indicates that grand jury sessions are otherwise closed to the public.

In view of the statutory scheme providing for private grand jury sessions and the unbroken history of secrecy surrounding these proceedings, it is especially persuasive that the legislative history of the 1988 amendment to section 939 contains no hint that a change of the magnitude suggested here was being contemplated. The provision with which we are concerned was one of a number of amendments to the statutes governing grand juries contained in Senate Bill No. 2753, 1987-1988 Regular Session. This bill was sponsored by the Grand Juror's Association of Orange County in an attempt to provide guidance for grand juries' handling of investigations in noncriminal matters by defining and clarifying the civil responsibilities of a

grand jury.[5] In testimony before the Assembly Committee on the Administration of Justice, the bill's author stated that the proposals in Senate Bill No. 2753 were what organized former grand jurors felt necessary to correct internal inconsistencies and omissions in existing law, all "evolutionary" and none "revolutionary."

With regard to section 939 specifically, there is no indication that the amendment would open civil sessions of the grand jury to the public. Section 939 is not mentioned at all in the analysis prepared for the Senate Committee on Judiciary. An analysis prepared for the Assembly Subcommittee on the Administration of Justice indicates that the amendment to section 939 specified that grand jurors who "retire" for reasons of partiality or prejudice from specific charges being considered by the grand jury may not be present at private sessions relating to such charges (see § 939.5). The analysis thus refers only to the newly added second sentence of section 939, not at issue here, and makes no mention of the added terms "criminal" and "civil."[6] Material in the Assembly policy committee files states that the amendment to section 939 "[c]larifies, without change in intent of existing law, who may and may not be present during specified grand jury activities." An analysis of the August 22 Assembly amendments prepared by the Office of Senate Floor Analyses indicates that the amendments "[r]evised provisions regulating who may be present during grand jury sessions." This reference is to the addition of language regarding the custodial officer (see fn. 4, *ante*); again, there is no mention of the added terms "criminal" and "civil."

In sum, while we agree with petitioner that a literal reading of section 939 indicates only criminal sessions of the grand jury are to be private, the facts that such an interpretation would render the statute inconsistent with other provisions of law governing grand jury proceedings and that the legislative history of the 1988 amendment contains no indication of any intent to depart from the long history of secrecy in grand jury proceedings requires

---

[5] According to an analysis prepared for the Senate Committee on Judiciary, the grand jury lost its fundamental purpose and came to suffer an "identity crisis" after the Supreme Court's determination that defendants have a due process right to a postindictment preliminary hearing (*Hawkins* v. *Superior Court* (1978) 22 Cal.3d 584 [150 Cal.Rptr. 435, 586 P.2d 916]) redirected consideration of evidence in criminal matters to preliminary hearings. Senate Bill No. 2753 was described as reflecting a view that the grand jury is more than a "vestigial organ of local government," serving "an abiding purpose as an institution allowing the average citizen a formal voice in the conduct of local public affairs."

[6] Background material provided by the bill's author to the legislative committees similarly describes the amendment of section 939 as correcting deficiencies in the present statute by clarifying that jurors excused pursuant to section 939.5 could not be present during deliberations on the matter from which they had been excused, remedying a grammatical problem with the last sentence of the statute and clarifying that no one other than a grand juror could be present during the expression of jurors' opinions or votes.

us to reject this construction. We do so with the utmost reluctance, compelled to assume words specifically inserted into the statute were not meant to be of consequence by the absurdity of assigning them their apparent meaning. Unfortunately, this case is one in which whatever interpretation we adopt necessarily would be inconsistent with some basic rule of statutory construction: To give effect to the plain language of the new statute would be to attribute to the Legislature an intent to radically alter the fundamental nature of grand jury proceedings in civil matters with no hint of such an intent in the legislative history; while to assume the Legislature could not have intended this result requires us to effectively excise unambiguous words inserted into the statute. It should not be the task of the judiciary to have to make this choice.

The order to show cause is discharged. The petition for writ of prohibition is denied. The stay heretofore granted is dissolved.

Benson, J., and Peterson, J., concurred.

Petitioner's application for review by the Supreme Court was denied March 14, 1991. Mosk, J., was of the opinion that the application should be granted.