[No. B048734. Second Dist., Div. Four. May 1, 1991.]

DAVID BOTELLO et al., Plaintiffs and Appellants, v.
SHELL OIL COMPANY et al., Defendants and Respondents.

COUNSEL

Folger & Levin, Thomas P. Laffey, Cristeta S. Paguirigan and Amy L. Neiman for Plaintiffs and Appellants.

Sherry A. Aarons for Defendants and Respondents.

OPINION

EPSTEIN, J.— ▉ In this case we are asked to decide a single issue of statutory interpretation: whether a mural is a "painting" within the meaning of The California Art Preservation Act (Act). (Civ. Code, § 987.)[1] We hold that it is.

### PROCEDURAL BACKGROUND

This case reaches us after the trial court granted defendants' motion for full summary judgment based on its conclusion that a mural is not a painting under the Act. Although defendants have raised other legal questions and some factual issues in defense of the lawsuit, both sides agree that the question of whether a mural can qualify as a painting within the terms of the Act is the only issue before us on appeal. With a single exception relating to removability of the mural, the facts are essentially undisputed, and we briefly recount them for purposes of this appeal, as they appear from the summary judgment papers.

The plaintiffs are artists. In 1980 they were hired by Shell Oil Company (Shell), one of the defendants, to paint a large mural on the wall of a service station owned by Shell. Shell accorded them full artistic freedom to design and execute the project. The mural, entitled "Filling Up On Ancient Energies," was begun in February 1980 and was completed in May of that year. Its themes were of Hispanic culture, and it included depictions of dinosaurs, Mayan dieties, motor vehicles, and other things. The mural covered 1,200 square feet of wall, and was highly visible to motorists and passersby traveling the Soto and Fourth Street area of East Los Angeles, where it was located. It bore the artists' names and addresses, and earned them a considerable amount of favorable publicity.

While the issue was contested, appellants presented evidence that the mural was executed in such a way that it could be removed from the wall to

---

[1] All code citations are to the Civil Code except where otherwise indicated.

which it was affixed without damage to the mural or to the wall. Since there is a triable issue of material fact about this matter, we cannot regard it as having been resolved in defendants' favor. (See Code Civ. Proc., § 437c, subd. (e); *Miles Laboratories, Inc.* v. *Superior Court* (1982) 133 Cal.App.3d 587, 593 [184 Cal.Rptr. 98].)

In 1988, defendants authorized the destruction of the wall to which the mural was affixed, in order to make room for a parking lot. The entire mural was destroyed, excepting only a 120-square-foot remnant. The destruction was accomplished without any effort to notify plaintiffs, who learned of it after the fact.

Plaintiffs brought an action against defendants in September 1988, seeking damages under the Act. After the case was at issue, both sides sought summary adjudication. Plaintiffs sought summary adjudication of designated issues, including the status of the mural as a "painting" under the Act. Defendants sought full summary judgment on the theory that murals are not covered by the Act and hence that plaintiffs had no basis in law for their action.

In their argument before the court, defendants relied heavily on a statute codified in the Government Code concerning state financing of art in public buildings. (Gov. Code, § 15813 et seq.) One of the provisions of that statute, Government Code section 15813.1, subdivision (b), defines the operative term, "work of art" as including a "painting, mural, fresco," and other designated forms of visual expression. Defendants argued that since this statute makes separate reference to "painting" and "mural," the singular reference to "painting" in the Act, a later-adopted law, demonstrates an intent to exclude murals from its coverage. The trial judge accepted this argument and, as we have seen, granted summary judgment in favor of defendants. Plaintiffs have appealed from the ensuing judgment.

## DISCUSSION

This case arises out of the interpretation of a statute, and we begin with an analysis of that law. It was enacted in 1979, and placed in the chapter of the Civil Code devoted to "Products of the Mind." (Pt. 3, tit. 2, ch. 3, beginning with § 980.) The Act begins with a legislative finding that the physical alteration or destruction of fine art that is an expression of the artist's personality is detrimental to the artist's reputation; that artists have an interest in protecting their works against such alteration or destruction; and that there is a public interest in preserving the integrity of cultural and artistic creations. (§ 987, subd. (a).)

The operative terms of the statute are defined. A key provision defines "fine art," as "an original painting, sculpture, or drawing, or an original work of art in glass, of recognized quality" other than a work prepared under contract for commercial use by its purchaser.[2] (§ 987, subd. (b)(2).)

The statute prohibits owners and possessors of fine art, other than the artist, from destroying the art, and from authorizing others to do so. (§ 987, subd. (c)(1).) A remedies provision authorizes artists to recover actual and punitive damages, as well as attorney fees and expert witness fees, upon successful prosecution of a lawsuit under the statute. (§ 987, subd. (e)(2), (3), (4).) The artist's rights under the statute are cumulative, descend to heirs, are transferable, and last until the 50th anniversary of the artist's death. (§ 987, subd. (g).) The statute applies to proscribed acts occurring on or after its January 1, 1980, operative date, regardless of the date that the fine art was created (§ 987, subd. (j)), and it has a limitations period of three years after the proscribed act or one year after its discovery, whichever is longer. (§ 987, subd. (i).)

The problem of fine art attached to a building receives special attention. If the art cannot be removed from the building without damage to the art or the building, the artist is deemed to have waived his or her rights under the statute, unless there is an express reservation of rights in a written, recorded instrument. (§ 987, subd. (h)(1).) But if the fine art can be removed from the building without damage (as is true in this case, according to the summary judgment papers), the owner must attempt to notify the artist of the impending destruction or alteration. The artist then has 90 days to remove the art at his or her own expense. If the artist fails to remove the art within that time, the owner may destroy it without liability. (§ 987, subd. (h)(2).)

■ Issues of statutory construction present questions of law, calling for an independent review by an appellate court. (See *California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856]; *Spilman v. California Highway Patrol* (1989) 212 Cal.App.3d 59, 63 [260 Cal.Rptr. 400].) ■ And since we are dealing with statutory interpretation, we begin with the cardinal rule applicable to that task: the court must ascertain the legislative intent so as to effectuate the purpose of the law. (See *Moore v. Panish* (1982) 32 Cal.3d 535, 541 [186 Cal.Rptr. 475, 652 P.2d 32]; *Pitman v. City of Oakland* (1988) 197

---

[2] Insofar as the statute applies to art affixed or attached to a structure, it contemplates structures owned by the artist and to art that is affixed or attached by arrangement with the owner. (See § 987, subd. (h).) It obviously does not apply to graffiti, which lacks these characteristics, is hardly classifiable as "fine art" (see § 987, subd. (f)), and which is the subject of several criminal laws. (See Pen. Code, §§ 594 et seq., 640; Veh. Code, § 42001.7.)

Cal.App.3d 1037, 1042 [243 Cal.Rptr. 306]; *Newland* v. *Kizer* (1989) 209 Cal.App.3d 647, 656 [257 Cal.Rptr. 450].)

If the statutory language is unambiguous, legislative intent is determined from the plain meaning of the language itself. (See *People* v. *Superior Court (Price)* (1984) 150 Cal.App.3d 486, 488 [198 Cal.Rptr. 61] [unless ambiguity, uncertainty or doubt appears, a statute is to be applied according to its terms without further judicial construction]; *City of Los Angeles* v. *Los Olivos Mobile Home Park* (1989) 213 Cal.App.3d 1427, 1433 [262 Cal.Rptr. 446] [if words of statute, given their ordinary meaning, are reasonably free from ambiguity, courts will look no further to ascertain their meaning].)

■ Application of these principles to this case yields an almost tautological result: a mural is a form of painting. ■ The dictionary rendering of the term (see *People* v. *Katrinak* (1982) 136 Cal.App.3d 145, 156 [185 Cal.Rptr. 869] [dictionary is proper source for determining meaning of words used in a statute]) is that a mural is "a painting or other work applied to and made integral with a wall surface."[3] And a "painting" is defined as a "decoration achieved by applying paint to a surface."[4] The Longman Dictionary of Art ("A handbook of terms, techniques, materials, equipment and processes") offers two definitions of "mural": "[a] painting or pictorial image executed directly on the surface of a wall" and "[a] large-scale painting on canvas or panel designed to be fixed permanently to a wall."[5]

As is apparent from these definitions, "mural" is a subset of painting, much as rose is to flower, or ring to jewelry, or sonnet to poetry. And, ordinarily, that would end the matter. But defendants argue that an element of ambiguity is introduced when the Act is compared with the Government Code provision. And both parties offer a plethora of legislative materials from which they urge opposing inferences. We have examined the material presented, and find little that is helpful to a resolution of the issue before us.

There are, however, a few indicia of legislative intent that may be noticed.

We may start with the declaration of legislative intent in the first subdivision of the Act. ■ A court is, of course, obliged to construe the statute according to the Legislature's own statement of its purpose, if it can. (See *Hejmadi* v. *AMFAC, Inc.* (1988) 202 Cal.App.3d 525, 544 [249 Cal.Rptr. 5]; *People* ex rel. *Younger* v. *County of El Dorado* (1971) 5 Cal.3d 480, 493 [96 Cal.Rptr. 553, 487 P.2d 1193] [findings and declarations of policy entitled to great weight].) ■ A crabbed construction of the statute, depriving

---

[3] Webster's Third New International Dictionary (1981) page 1488.
[4] *Id.* at page 1621.
[5] Longman Dictionary of Art (1986) page 136.

artists who execute murals from the protection accorded those who execute other kinds of paintings, would hardly serve the declared policies of protecting artistic expression and preserving the integrity of cultural and artistic creations, which are the purposes of the statute.

Beyond that, the Act is a curative statute that should be liberally interpreted to achieve its stated purposes. (See *Woodman* v. *Superior Court* (1987) 196 Cal.App.3d 407, 414 [241 Cal.Rptr. 818].)

Turning to the internal construction of the Act, we note the careful differentiation in subdivision (h) between fine art that is removable from a building and that which is not. A mural is perhaps the most obvious form of fine art that may be attached to a building. Defendants argue that we should construe the subdivision as limited to sculpture and glass work. It seems to us to be incongruous to construe this portion of the statute in such a way as to exclude its most obvious application.

There is more. The Legislature itself had occasion to construe the Act several years after its original enactment. The precipitating cause was the threatened destruction of a David Hockney mural that had been painted on the wall of a swimming pool at the Hollywood Roosevelt Hotel. Its location at that venue presented a violation of a safety regulation that required every public swimming pool to have a plain white finish. (Cal. Code Regs., tit. 24, pt. 2, § 2-9011, subd. (c).) The Legislature responded with an uncodified general law, Statutes 1988, chapter 34, that specifically exempted the mural from the regulatory provisions that would have required its destruction. In section 1(c) of the 1988 statute, the Legislature stated the purpose for its action: "To allow needless destruction of this unique work of art would be a great tragedy and inconsistent with the intent of the California Art Preservation Act, which establishes 'a public interest in preserving the integrity of cultural and artistic creations.'"

By this treatment, the Legislature expressly recognized that the mural was within the protection of the Act. (5) "While we are not bound by a subsequent legislative interpretation of existing law, it may be considered as a factor in determining the correct meaning and effect of a statute." (*J. Paul Getty Museum* v. *County of Los Angeles* (1983) 148 Cal.App.3d 600, 606 [195 Cal.Rptr. 916]; and see *People* v. *Pieters* (1991) 52 Cal.3d 894, 902, fn. 5 [276 Cal.Rptr. 918, 802 P.2d 420].)

 Against all of this, defendants present two arguments. The first is based upon the fact that the Legislature used the terms "painting" and "mural" in a 1976 statute authorizing state funding of art in public buildings. The inference of a differentiation in meaning from that usage is simply

too weak a support upon which to rest the construction that defendants advance for construing the Act.

The apparent purpose of the 1976 statute is to encourage art in public buildings. (See Gov. Code, § 15813.) It includes a comprehensive definition of what is a "work of art" within the meaning of its provisions—so much so that the framers thought it appropriate to exclude environmental landscaping from the definition. (Gov. Code, § 15813.1, subd. (b).)[6]

Defendants cite no maxim or principle of statutory construction for the result they espouse. Their thesis, apparently, is that where the Legislature uses a term in a limited sense in one statute, it must intend the same limitation to apply if the term is used in another law. The argument is unpersuasive in this context. In the first place, the term "painting" in the Government Code provision does not appear to have been used in a limited sense but, instead, is one of a series of overlapping terms and phrases employed to afford a comprehensive treatment to the term being defined ("work of art"). For example, the term "drawing" and the phrase "work of graphic art" were both used in this statute despite their obvious overlap. But beyond that, the approach to statutory construction advanced by defendants is a mere normative guide in any case, and must yield to the primary principle that the intent of a statute must govern its interpretation. (See *Estate of Banerjee* (1978) 21 Cal.3d 527, 539 [147 Cal.Rptr. 157, 580 P.2d 657]; *In re Joseph B.* (1983) 34 Cal.3d 952, 957 [196 Cal.Rptr. 348, 671 P.2d 852].) **(6)** And " '[t]here is no rule of law that necessarily requires the same meaning to be given to the same word used in different places in the same statute' . . . much less the same word used in different statutes relating to essentially different matters and subject to different construction." (*Lambert* v. *Conrad* (1960) 185 Cal.App.2d 85, 95 [8 Cal.Rptr. 56], overruled on other grounds in *Johnson & Johnson* v. *Superior Court* (1985) 38 Cal.3d 243, 255, fn. 7 [211 Cal.Rptr. 517, 695 P.2d 1058] [construing former Code Civ. Proc., § 581a, providing for dismissal on failure to return summons to clerk within three years, and former section 410 of that code, requiring return of summons to issuing judge or clerk].)

---

[6]Section 15813.1 states in pertinent part: "For purposes of this chapter, the following terms have the following meanings:

". . . . . . . . . . . . . . . .

"(b) 'Work of art' means any work of visual art, including but not limited to, a drawing, painting, mural, fresco, sculpture, mosaic, or photograph, a work of calligraphy, a work of graphic art (including an etching, lithograph, offset print, silk screen, or a work of graphic art of like nature), crafts (including crafts in clay, textile, fiber, wood, metal, plastic, glass, and like materials), or mixed media (including a collage, assemblage, or any combination of the foregoing art media). The term 'work of art' does not include environmental landscaping placed about a state building.

". . . . . . . . . . . . . . . ."

Defendants' other argument is that, if the term "painting" were construed to include "mural" it would so burden ownership rights as to render the Act unconstitutional. Defendants present this barely developed contention without any citation of authority. Apparently, they seek to invoke the maxim that statutes will be construed to avoid doubts as to their constitutionality if it is reasonably possible to do so. (See *People* v. *Smith* (1983) 34 Cal.3d 251, 259 [193 Cal.Rptr. 692, 667 P.2d 149], and authorities there cited.) This guide to statutory construction does not apply where the desired construction would do violence to the statutory language. (See *Fort* v. *Civil Service Commission* (1964) 61 Cal.2d 331, 334 [38 Cal.Rptr. 625, 392 P.2d 385].) In light of the plain language of the statute we are reviewing, the qualifications sought by appellants would require such an impermissible appellate rewriting of the enactment. Beyond that, there is no showing, nor is it evident, that an impermissible burden would be placed on the owner of property on which a mural has been painted. As we have seen, there is no duty at all if the mural cannot be detached from the structure without damage to the mural or the structure, unless the artists' rights have been preserved in an executed and recorded instrument. Only if the mural can be removed without such damage does the owner have any obligation to act, and then the duty is limited to notifying the artist so that he or she can remove it without expense to the owner. The very limited restriction imposed by this statute is hardly beyond constitutional bounds. (See *Agins* v. *City of Tiburon* (1979) 24 Cal.3d 266, 277 [157 Cal.Rptr. 372, 598 P.2d 25].)

■ We conclude that the Legislature intended the term "fine art" to include paintings in the form of murals that otherwise qualify for protection under the Act.

## DISPOSITION

The judgment is reversed and the case remanded for further proceedings not inconsistent with this opinion. Appellants are to have their costs on appeal.

George, Acting P. J., and Goertzen, J., concurred.

Respondents' petition for review by the Supreme court was denied July 24, 1991.