[No. B068370. Second Dist., Div. Seven. Mar. 18, 1993.]

LOS ANGELES TAXPAYERS ALLIANCE et al., Plaintiffs and Respondents, v.
FAIR POLITICAL PRACTICES COMMISSION, Defendant and Appellant.

**COUNSEL**

Scott Hallabrin, Deanne Stone and John W. Wallace for Defendant and Appellant.

Daniel Hays Lowenstein for Plaintiffs and Respondents.

**OPINION**

**LILLIE, P. J.**—Fair Political Practices Commission (FPPC) appeals from judgment granting peremptory writ of mandamus setting aside FPPC's decision of July 9, 1991, assessing a $6,000 monetary penalty against Los Angeles Taxpayers Alliance (LATA) and Fred Huebscher for three violations of Government Code section 84305.5, subdivision (a)(2),[1] requiring that "slate mailers" contain a prescribed "Notice to Voters." The appellate

---

[1] In 1989, Government Code section 84305.5 provided in pertinent part: "(a) No slate mailer organization shall send a slate mailer unless: . . . [¶] (2) At the top or bottom of the front side or surface of at least one insert or at the top or bottom of one side or surface of a postcard or other self-mailer, there is a notice in at least 8-point roman, boldface type, which shall be in a color or print which contrasts with the background so as to be easily legible, and in a printed or drawn box and set apart from any other printed matter. The notice shall consist of the following statement: [Set off and enclosed in a box is the statement:] NOTICE TO VOTERS ■ THIS DOCUMENT WAS PREPARED BY (name of slate mailer organization), NOT AN OFFICIAL POLITICAL PARTY ORGANIZATION. Appearance in this mailer does not necessarily imply endorsement of others in this mailer. Appearance is paid for and authorized by each candidate and ballot measure which is designated by an *."

issue is whether respondents' three mass mailers constituted slate mailers pursuant to Government Code section 82048.3.[2]

## Factual and Procedural Background

Inasmuch as the material facts as found by the trial court are not in dispute, the following factual and procedural background is adopted from the trial court's statement of decision:

"1. On June 6, 1989, certain 'run-off' elections were held in the City of Los Angeles [for two positions on the college board, two positions on the Los Angeles School Board, and for Los Angeles City Council]. In these run-off elections, only two candidates appeared on the ballot for each office, namely the two highest vote-getters in a primary election that had been held on April 11, 1989.

"2. [LATA was] responsible for three mass mailings, sent on or about May 26, 1989, relating to the June 6 run-off elections. Each of the three mailings urged the election of three candidates running for three separate offices. In addition, each mailing included a box either expressly advocating the defeat of the opponent of one of the candidates being supported or statements about the opponent of one of the candidates being supported that, taken as a whole, unambiguously urged the defeat of the opponent . . . .

"3. None of the three mailings contained the 'Notice to Voters' that Government Code section 84305.5 requires to appear on a 'slate mailer' sent by a 'slate mailer organization.' Petitioner Los Angeles Taxpayers Alliance is a slate mailer organization.

"4. In proceedings conducted pursuant to the Administrative Procedure Act, [FPPC] in a decision rendered on July 9, 1991, . . . determined that [LATA] had violated Government Code section 84305.5 by sending the three mailers described above. This decision was based on [FPPC's] determination that the mailers were 'slate mailers' as defined in Government Code section 82048.3. [FPPC] imposed the maximum penalty allowed under Government Code section 83116, subdivision (c), $2,000 for each violation, for a total of $6,000."

In its statement of decision, the trial court also made the following "conclusions of law": "When two or more candidates are running against

---

[2]Government Code section 82048.3 provides that " 'Slate mailer' means a mass mailing which supports or opposes a total of four or more candidates or ballot measures."

A "mass mailing" means "over two hundred substantially similar pieces of mail, but does not include a form letter or other mail which is sent in response to an unsolicited request, letter or other inquiry." (Gov. Code, § 82041.5.) It is undisputed that the three mailers in issue were mass mailings; the disputed issue on this appeal concerns the definition of "slate mailer."

each other for a single office, Government Code section 82048.3 does not contemplate that support for one candidate and opposition to that candidate's opponent or opponents should be counted as more than one. To count separately the opponent of a supported candidate would make the definition of 'slate mailer' confusing and would be contrary to the legislative intent. [¶] . . . None of the mailings in question in this case were 'slate mailers.' Each mailing supported three candidates. The fact that the mailings contained messages adverse to the opponents of some of the supported candidates is immaterial for purposes of Government Code section 82048.3. [¶] . . . Because [LATA's] mailings were not 'slate mailers,' they were not required to contain the 'Notice to Voters' set forth in Government Code section 84305.5. [¶] . . . For the reasons stated, [FPPC's] decision that petitioners violated Government Code section 84305.5 is unsupported by [FPPC's] findings. [¶] . . . It is not necessary to rule on [LATA's] claim that Government Code section 84305.5, as applied to them by [FPPC] in this case, violates [LATA's] first amendment right to freedom of speech."

In April 1992, the court filed judgment granting peremptory writ of mandamus. The judgment provided that a peremptory writ of mandamus "shall issue from the court, remanding the proceedings to [FPPC] and commanding [FPPC] to set aside its decision of July 9, 1991, . . . and to reconsider its action in the light of this court's statement of decision . . . ."

FPPC filed timely notice of appeal from the judgment. It contends on appeal that the trial court erred in construing the statute; Government Code section 82048.3 is clear and unambiguous on its face and requires that all candidates that are supported or opposed in a mailer be counted separately, even if two or more candidates are running for the same office. FPPC contends that its interpretation of the statute does not create an absurdity and is consistent with the statement in Government Code section 81003 that "This title [Political Reform Act of 1974] should be liberally construed to accomplish its purposes."

Respondents argue, inter alia, that the Legislature could not have intended the interpretation urged by appellant because support of one candidate necessarily entails opposition to his or her opponent(s) and a definition of "slate mailer" which turns upon the content of the language used to support a candidate and defeat his or her opponents is unreasonable, would violate the first amendment's prohibition against content-discriminatory burdens, and the statute would be void for vagueness.

# I

## STANDARD OF REVIEW

■ "Issues of statutory construction present questions of law, calling for an independent review by an appellate court. [Citations.] ■ And since we are dealing with statutory interpretation, we begin with the cardinal rule applicable to that task: the court must ascertain the legislative intent so as to effectuate the purpose of the law." (*Botello* v. *Shell Oil Co.* (1991) 229 Cal.App.3d 1130, 1134 [280 Cal.Rptr. 535].) "A court is, of course, obliged to construe the statute according to the Legislature's own statement of its purpose, if it can." (*Id.* at p. 1135.)

A court may look beyond the literal words of a statute when plain meaning leads to unreasonable results inconsistent with the purposes of the legislation. (*Love* v. *Superior Court* (1990) 226 Cal.App.3d 736, 745 [276 Cal.Rptr. 660].) The intent of the Legislature "can only be determined with reference to the context in which the words are used; that is, with reference to such purpose as may be discerned from examining the entire enactment of which the words are part . . . . Thus, in analyzing the legislative usage of certain words, the objective sought to be achieved by a statute as well as the evil to be prevented is of prime consideration . . . . The courts resist blind obedience to the putative 'plain meaning' of a statutory phrase where literal interpretation would defeat the Legislature's central objective." (*Farnow* v. *Superior Court* (1990) 226 Cal.App.3d 481, 486 [276 Cal.Rptr. 275].)

# II

## GOVERNMENT CODE SECTION 82048.3 IS AMBIGUOUS

■ Section 82048.3 defines a slate mailer as "a mass mailing which supports or opposes a total of four or more candidates or ballot measures." Appellant contends that this language "is plain and clear on its face," and apparently claims that it should be applied by simply counting all candidates identified in the mailer, regardless of whether a candidate is an opponent of one of the candidates supported in the mailer. The application of Government Code sections 84305.5 and 82048.3 to mailers dealing with runoff elections like those herein is apparently an issue of first impression.

It is clear that the situation with respect to such elections is different than elections with respect to ballot measures, where voters usually vote "yes" or "no" on each ballot measure, without regard to whether there may be other measures on the ballot.

As pointed out by respondents, in the runoff elections which were the subject of the mailers involved herein, the campaign mailers endorsing one

candidate necessarily opposed that candidate's opponent, whether or not the opponent was mentioned expressly or by implication. The FPPC, however, does not appear to argue that those candidates opposed by logical implication are to be counted under the statute. Respondents apparently agree with this conclusion; however, respondents also maintain that even an endorsed candidate's opponents who are expressly opposed in a mailer should not be counted in the instant circumstances.

According to respondents, any interpretation of the statute which counts the opponents of an endorsed candidate, raises the question as to what kind of statement(s) about a candidate or his or her opponent would constitute opposition so as to require the opponent to be counted, separately from the candidate being endorsed, as one of the candidates supported or opposed by the mailing. Without implying that the FPPC would have the legal power to do so, we note that there is nothing in our record indicating the FPPC has adopted any regulations in this area.

In attempting to use only one sentence applicable to both ballot measures and candidates, the Legislature created an ambiguity by using the phrase "supports or opposes a total of four or more" with respect to the issue of how to count the candidates in the type of elections in the instant mailers. This statute is, on its face, ambiguous with respect to whether several candidates for the same office are to be counted. As to such elections, the words employed by the Legislature convey no "plain meaning." Accordingly, we must look at the purpose of the law to ascertain the Legislature's intent. (*Brown* v. *Superior Court* (1984) 37 Cal.3d 477, 485 [208 Cal.Rptr. 724, 691 P.2d 272].)

### III

### LEGISLATIVE INTENT

■ To discern legislative intent, it is proper for us to examine the legislative history and statutory context of the provision under scrutiny. (*Long Beach Police Officers Assn.* v. *City of Long Beach* (1988) 46 Cal.3d 736, 743 [250 Cal.Rptr. 869, 759 P.2d 504].) Government Code sections 82048.3 and 84305.5 were added by Statutes 1987, chapter 905, sections 1 and 8 respectively.

Section 9 of chapter 905, Statutes 1987 states: "The Legislature finds and declares that the provisions of this act further the purposes of the Political Reform Act of 1974 within the meaning of subdivision (a) of Section 81012 of the Government Code." Section 81012 deals with amendment or repeal of the Act. Section 81002, captioned "Legislative intent," provides in pertinent

part: "The people enact this title [Political Reform Act of 1974] to accomplish the following purposes: [¶] (a) Receipts and expenditures in election campaigns should be fully and truthfully disclosed in order that the voters may be fully informed and improper practices may be inhibited. . . ."

The foregoing provisions do not speak directly to the issue of slate mailers. However, Government Code section 84305.5 itself provides evidence of legislative intent because it attempts to remedy certain specified problems with slate mailers. As revealed by its language, the purpose of the "Notice To Voters" provision of subdivision (a)(2) of section 84305.5 is to inform voters that the mailer was prepared by the named organization, which is not an official political party organization, that a candidate's appearance in the mailer does not necessarily imply endorsement of others in the mailer, and that each candidate designated by an asterisk paid for and authorized appearance in the mailer.[3]

The problem addressed by the notice concerns a voter's inference that a candidate's appearance in a mailer entails his or her endorsement of other candidates in the mailer when such endorsement does not in fact exist. While a voter may draw such incorrect inference whenever two or more candidates are endorsed in a mailer, the notice provisions of Government Code section 84305.5 do not apply unless the mass mailing "supports or opposes a total of *four* or more candidates." (Italics added.)

---

[3]Two documents in our record may constitute part of the legislative history of the statutes in issue herein, but they are not particularly pertinent. One document is an August 21, 1987, letter from an attorney of the legal division of the FPPC to a consultant to the Ways and Means Committee of the California State Assembly; the letter discusses the issue of the fiscal impact to local government of the slate mailer provisions.

The other document, a press release, states: "Senator William Craven (R-Oceanside) announced today that he will author legislation to crack down on campaign 'slate mailers' that confuse and mislead voters. [¶] During the 1986 elections, there were numerous complaints about slate mailers and 'Voter Guides' that endorse several candidates and ballot measures. [¶] Although many slate mailers are produced for profit by firms, these mailers often appear to be official political party publications. [¶] In addition, slate mailers often include pictures and names of prominent public officials who have not consented to appear on the mailings. This practice misleads voters into thinking that the mailers' recommendations are endorsed by these officials when, in fact, the officials may actually oppose the recommendations. [¶] Senator Craven stated: 'Slate mailers have become an important method of communication in California elections. Unfortunately, many of these mailings are deceptive. My legislation, Senate Bill 1311, will correct the worst abuses and help voters evaluate candidates and issues prior to making decisions at the polls.' [¶] Senate Bill 1311 will require slate mailers to clearly identify the name of the firm producing the mailer and the fact that it is not an official political party publication. In addition, slate mailers would be required to specifically identify whether or not each candidate or ballot measure included in the mailer has consented or paid to be included. . . . [¶] Senate Bill 1311 is based on recommendations of the Fair Political Practices Commission which conducted extensive public hearings dealing with the abuses of slate mailers."

With respect to the mass mailings at issue in the instant case, FPPC contends that it was the mailers' express opposition to the opponent of one of the *three supported candidates* which caused the mailer to support or oppose a total of *four* candidates, thus constituting a slate mailer within the meaning of the statute. However, any danger that may exist with respect to incorrect voter inferences pertaining to *three* supported candidates' endorsements is not increased by the addition of statements adverse to the opponents of the three supported candidates. A voter reasonably would not infer that the opposed candidate endorsed his or her opponent (the candidate supported in the mailing) or paid for his or her opposition in the mailing, or endorsed other candidates supported or opposed in the mailing.

Under the interpretation urged by the FPPC, a mass mailing which supported *one* candidate for an office, and opposed that candidate's *three* opponents, would constitute a slate mailer even though there is no reasonable possibility of the type of incorrect voter inference addressed by the notice provisions of Government Code section 84305.5, subdivision (a)(2). In other words, the FPPC would require the notice on a mailing to which it would not apply. ■ " 'It has been called a golden rule of statutory interpretation that unreasonableness of the result produced by one among alternative possible interpretations of a statute is reason for rejecting that interpretation in favor of another which would produce a reasonable result.' " (*Terminal Plaza Corp.* v. *City and County of San Francisco* (1986) 186 Cal.App.3d 814, 828 [230 Cal.Rptr. 875].)

■ We agree with the interpretation of the slate mailer statutes adopted by respondents and the trial court: In the type of elections at issue herein, the opponents of candidates supported in a mass mailing are not included in the count towards the total required to constitute a slate mailer. Appellant maintains that such an interpretation is tantamount to an improper rewriting of the definition of slate mailer to insert an exception or qualification with respect to the meaning of the word "candidate" which is not contained therein. However, in the face of statutory ambiguity, we do not rewrite the slate mailer statutes, but simply adopt the interpretation which more reasonably promotes the objectives of the statutes and avoids absurd consequences. Our interpretation also is influenced "by the precept 'that a court, when faced with an ambiguous statute that raises serious constitutional questions, should endeavor to construe the statute in a manner which *avoids* any doubt concerning its validity.' " (*Young* v. *Haines* (1986) 41 Cal.3d 883, 898 [226 Cal.Rptr. 547, 718 P.2d 909], original italics.)

Because they urge a definition of slate mailer which avoids constitutional issues, respondents do not challenge the constitutionality of the slate mailer

requirements in general; accordingly, we do not need to reach such issues. However, we note that appellant's proposed interpretation of the statute presents significant vagueness problems as discussed in *Hynes* v. *Mayor of Oradell* (1976) 425 U.S. 610, 620 [48 L.Ed.2d 243, 253, 96 S.Ct. 1755] and *Cranston* v. *City of Richmond* (1985) 40 Cal.3d 755, 763 [221 Cal.Rptr. 779, 710 P.2d 845].[4]

FPPC's interpretation may also subject the statutes to the "exacting First Amendment scrutiny" (*Riley* v. *National Federation of Blind* (1988) 487 U.S. 781, 798 [101 L.Ed.2d 669, 690, 108 S.Ct. 2667]) required for content-based regulation of speech; in its briefs on this appeal, the FPPC does not adequately justify its interpretation of the slate mailer statutes under First Amendment principles.

For all of the foregoing reasons, we affirm the trial court's judgment on the ground that it correctly interpreted Government Code section 82048.3. We do not intend to, and in fact do not, address the issue of the constitutionality of the slate mailer statutes.

## DISPOSITION

The judgment is affirmed. Respondents are entitled to costs on appeal.

Johnson, J., and Woods (Fred), J., concurred.

---

[4]Adverting to the vagueness problem in their brief, respondents state: "We shall not exhaustively explore this metaphysical swamp, but a few highlights should give an indication of what a swamp it is. Initially, the FPPC's expert witness declared that for opponents to be 'opposed' they have to be mentioned in the mailer by name. Later he said the opponents did not need to be mentioned by name. He then said an unnamed opponent would be counted if there was an 'unambiguous description' of the opponent. But he did not believe a statement such as 'The opponents of Candidate X are unqualified' was an unambiguous statement that X's opponents were unqualified. Nor did he think a statement that X's 'three opponents are unqualified' was an unambiguous criticism of the opponents, though he admitted this case was 'getting more on the line,' and therefore the FPPC might disagree with him." (Fns. omitted.)

We also note similar problems arise with respect to statements in a mailer that "Candidate Jones is the only candidate qualified for X office," and "Of all four candidates for X office, only candidate Jones is qualified," and a statement in a similar mailer *naming* Jones's opponents. With varying degrees of explicitness, all of the foregoing mailers criticize Jones's three opponents. The problem with FPPC's interpretation of the slate mailer statutes is that the statutes offer no guidelines as to whether any or all of the foregoing mailers would be slate mailers. Any attempt by the FPPC to distinguish one of the foregoing mailers from the others, subjecting one to regulation while the others are not, may be deemed a content-based regulation of speech.