[No. A051466. First Dist., Div. Three. Mar. 25, 1992.]

SHIRLEY THORNTON et al., Plaintiffs and Respondents, v. LONNIE M. CARLSON, as Interim Director, etc., Defendant and Appellant.

**COUNSEL**

Daniel E. Lungren, Attorney General, Charlton Holland III, Assistant Attorney General, Stephanie Wald and Harlan E. Van Wye, Deputy Attorneys General, and Victor G. Binsacca for Defendant and Appellant.

Alan Lieberman, Clare Pastore, Melinda R. Bird and Tanya Broder for Plaintiffs and Respondents.

OPINION

WHITE, P. J.—Lonnie M. Carlson, as Interim Director of the California Department of Social Services (Department), appeals from an order granting a preliminary injunction. The injunction prevents the Department from enforcing certain administrative regulations which implement a state program providing emergency payments to Supplemental Security Income recipients. (Welf. & Inst. Code, § 12550.)[1] We reverse in part and affirm in part.

I

FACTS

In California, eligible aged, blind or disabled persons receive Supplemental Security Income (SSI) which is funded jointly by the federal and state governments.[2] (§§ 12000-12351; 42 U.S.C. § 1381 et seq.) The maximum monthly SSI payment for an aged or disabled person is $630. Blind recipients receive $704. (§ 12200, subds. (a) & (c).)

In 1973, the California Legislature also established a fully state-funded program to provide additional emergency payments to SSI recipients. (Stats. 1973, ch. 1216.) The enabling legislation states that the purpose of the program is to "meet the needs of [SSI] recipients . . . under emergency or special circumstances in the event that the federal government makes no provision for such payment . . . ." (§ 12500.) The law defines "special circumstances" as "those which are not common to all recipients and which arise out of need for certain goods or services, and physical infirmities or other conditions peculiar on a nonrecurring basis, to the individual's situation. Special circumstances shall include replacement of essential household furniture and equipment, or clothing when lost, damaged or destroyed by a catastrophe, necessary moving expenses, required housing repairs and *unmet shelter needs*." (§ 12550, italics added.)

The present case focuses on the meaning of the phrase "unmet shelter needs." Shortly after the statute was enacted, the Department adopted regulations (effective Jan. 1, 1974) which severely limited the circumstances under which payments would be provided for "unmet shelter needs." (Eligibility assistance standard (EAS) 46-425.) In particular, the regulations only permitted expenses for relocation where the recipient already had housing

---

[1]Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

[2]The jointly funded benefits are referred to as "SSI/SSP" benefits. For purposes of brevity, we refer to them as "SSI" benefits.

and was required to move "because of eviction or current housing is unsafe or unhealthful as determined by the county welfare department, . . ." (EAS 46-425.232.)[3] Although the regulations were amended in November of 1988, they still restricted relocation payments to those cases where it was "necessary because of eviction or because current housing i[s] unsafe or unhealthful as determined by the [county welfare department]." (EAS 46-425.66.)[4] In short, the regulations contemplated that the special circumstances program was designed to meet the "unmet shelter needs" of persons who had lost housing for specific reasons, not the needs of persons who had no housing in the first instance (what we would today call the "homeless").

In April of 1990, several SSI recipients and the Homeless Union of Oakland (hereafter plaintiffs) filed a class action suit challenging the regulations promulgated by the Department. In particular, the plaintiffs alleged that the regulations too narrowly defined the circumstances in which benefits could be paid for "unmet shelter needs." The plaintiffs claimed the regulations were too restrictive in the following respects: First, assistance for securing permanent housing is improperly limited to costs "necessary because of eviction or because current housing is unsafe or unhealthful as determined by the [county welfare department]." Second, no assistance is available to pay for temporary housing. Third, there is no provision for payment of costs necessary to prevent eviction. And fourth, the $300 maximum payment for required deposits to secure rental housing is inadequate. In addition, the suit alleged that the Department had not provided SSI recipients with reasonable and effective notice of the benefits available through the special circumstances program.

Following a hearing, the trial court granted plaintiffs' request for a preliminary injunction. The court's order enjoined the Department from: "1. Denying Special Circumstances assistance to otherwise eligible SSI recipients who have unmet shelter needs on the grounds that they are unable to

---

[3]The original regulation provided in pertinent part: ".232 *Recipient(s) Does not Own his Home* [¶] When moving is necessary because of eviction or current housing is unsafe or unhealthful as determined by the county welfare department, payment shall be allowed to cover costs o[f] securing suitable housing as designated below. [¶] a. If the recipient or recipient couple is moving to rental housing, payment under this section shall be limited to: [¶] (1) required utility deposits; [¶] (2) first and last month's rental; and [¶] (3) cleaning fees."

[4]The present regulation provides in pertinent part: ".66 Supplemental moving expenses, including the required costs of securing suitable housing as designated below, necessary because of eviction or because current housing i[s] unsafe or unhealthful as determined by the CWD. [¶] .661 Payment for securing housing shall be limited to one time only for each recipient unless it is determined by the CWD that the applicant(s) did not cause the need for another move. [¶] .662 If the recipient(s) is renting housing, payment up to a maximum of $300 per move under this section shall be limited to: [¶] .6621 Required deposits for gas, water, sewage, electricity including hoo[k]-up fees, and installation charges for a telephone. [¶] .6622 First and last months' rent when required by the landlord to secure the rental housing. . . . [¶] .6623 Cleaning fees and/or security deposits."

provide independent documentation of an eviction or a forced move from unsafe or unhealthful housing; [¶] 2. Denying Special Circumstances assistance to otherwise eligible SSI recipients who are unable to immediately secure permanent housing and whose unmet shelter need is for temporary shelter; [¶] 3. Denying Special Circumstances assistance to otherwise eligible SSI recipients who reside in rental housing to enable such persons to prevent eviction and remain in their present housing; [¶] 4. Failing to employ reasonable means of giving notice of the availability [of] Special Circumstances assistance to all SSI recipients . . . ." The order specifically compelled the Department to meet with plaintiffs' counsel and to prepare a plan for providing effective notice of the special circumstances program within 30 days of the date of the order.

The Department has appealed from this order.[5]

## II

The decision to grant a preliminary injunction generally lies within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. (*DeYoung* v. *City of San Diego* (1983) 147 Cal.App.3d 11, 16 [194 Cal.Rptr. 722].) Normally, the trial court must determine whether defendants would suffer greater harm from issuance of the preliminary injunction than the plaintiffs would suffer from its refusal. In making this determination, the court must consider the degree of probability that the plaintiffs will ultimately prevail on the merits. (*Id.*, at p. 17; *IT Corp.* v. *County of Imperial* (1983) 35 Cal.3d 63, 69-70 [196 Cal.Rptr. 715, 672 P.2d 121].) However, where, as here, the trial court's decision to grant an injunction is based solely on an interpretation of a statute, we review the matter as a question of law, and are not bound by the abuse of discretion standard. Instead, we determine whether the trial court's interpretation of the statute is correct as a matter of law, and do not consider the relative harm suffered by the parties. (*DeYoung, supra,* at p. 17; *City of Santa Monica* v. *Yarmark* (1988) 203 Cal.App.3d 153, 161 [249 Cal.Rptr. 732].)

We conclude the trial court erred when it construed the statute to invalidate the Department's regulations.

The rules of statutory construction applicable to this case were recently summarized by Division One of this district: "On the one hand, 'when statutory language is clear and unambiguous, "there is no need for construction, and courts should not indulge in it." ' [Citations.] . . . [¶] On

---

[5]An order granting a preliminary injunction is appealable. (Code Civ. Proc., § 904.1, subd. (f); 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 98, p. 117.)

the other hand, '[t]he meaning of the words of a statute or, to use the alternative approach favored by many courts, the intent of the Legislature, can only be determined with reference to the context in which the words are used; that is, with reference to such purpose as may be discerned from examining the entire enactment of which the words are part . . . . Thus, "in analyzing the legislative usage of certain words, ' "the objective sought to be achieved by a statute as well as the evil to be prevented is of prime consideration . . . ." ' [Citations omitted.]" . . . The courts resist blind obedience to the putative "plain meaning" of a statutory phrase where literal interpretation would defeat the Legislature's central objective.' [Citation.] . . . 'The words of a statute will not be literally construed if this would cause an absurd result, or if it would fail to give effect to the manifest purposes of the statute in light of its legislative history.' [Citations.]" (*Farnow* v. *Superior Court* (1990) 226 Cal.App.3d 481, 485-486 [276 Cal.Rptr. 275].)

Initially, we note that the statutory phrase at issue here—"unmet shelter needs"—is neither clear nor unambiguous. The phrase is so broad that it could be construed to include almost any "need" occasioned by almost any reason. Thus, the phrase demanded administrative interpretation. ■ Viewing the phrase in the context of the legislation in which it appears, it is clear that the Legislature did not intend to meet *all* "unmet shelter needs" of all SSI recipients. The relevant statute—section 12550—appears as part of a legislative chapter entitled "Emergency Payments and Special Circumstances for Aged, Blind and Disabled." Section 12500 states that "[t]he purpose of this chapter is to provide payment to meet the needs of [SSI] recipients under . . . emergency or special circumstances . . . ." Section 12550 defines "special circumstances" as those which are "not common to all recipients" and which are "peculiar on a nonrecurring basis, to the individual's situation." Examples of "special circumstances" include "replacement of essential household furniture and equipment, or clothing when lost, damaged or destroyed by a catastrophe, . . ." (§ 12550.) Thus, the legislation appears to contemplate that "special circumstances" are created by some nonrecurring event or change in circumstances.

Having concluded that the phrase "unmet shelter needs" requires administrative clarification, and that the Legislature intended that "special circumstances" be premised on some nonrecurring event or change in circumstances, we come to the crux of this case: namely, the traditional deference which courts have shown administrative interpretation of statutes, particularly where the Legislature has acquiesced in the interpretation. ■ " 'Consistent administrative construction of a statute over many years, particularly when it originated with those charged with putting the statutory

machinery into effect, is entitled to great weight . . . .' " (*Gay Law Students Assn.* v. *Pacific Tel. & Tel. Co.* (1979) 24 Cal.3d 458, 491 [156 Cal.Rptr. 14, 595 P.2d 592], quoting *DiGiorgio Fruit Corp.* v. *Dept of Employment* (1961) 56 Cal.2d 54, 61-62 [13 Cal.Rptr. 663, 362 P.2d 487]; *DeYoung* v. *City of San Diego, supra,* 147 Cal.App.3d at p. 18.) This is particularly true where the Legislature and other interested parties have long acquiesced in the interpretation. (*Lute* v. *Governing Board* (1988) 202 Cal.App.3d 1177, 1183 [249 Cal.Rptr. 161]; *Anderson* v. *San Francisco Rent Stabilization & Arbitration Bd.* (1987) 192 Cal.App.3d 1336, 1343 [237 Cal.Rptr. 894]; *Steelgard, Inc.* v. *Jannsen* (1985) 171 Cal.App.3d 79, 88 [217 Cal.Rptr. 152].) "Under these circumstances, the administrative practice will be upheld ' "unless it is *clearly* erroneous or unauthorized." ' " (*Steelgard, Inc.* v. *Jannsen, supra,* 171 Cal.App.3d at p. 88, italics in original, quoting *Richfield Oil Corp.* v. *Crawford* (1952) 39 Cal.2d 729, 736 [249 P.2d 600].)

▮ Here, the Department followed the relevant administrative practices for more than 16 years before those practices were challenged by the plaintiffs in this lawsuit. That is, for more than 16 years the Department conditioned relocation assistance on a showing that a move was necessary because of eviction or unsafe or unhealthful housing; provided no payments to cover the cost of temporary housing; and provided no payments to cover costs necessary to prevent eviction. Each year during that time, the Legislature had the opportunity to broaden the scope of "unmet shelter needs," but did not do so. "The Legislature is presumed to be aware of a long-standing administrative practice . . . . If the Legislature, as here, makes no substantial modifications to the act, there is a strong indication that the administrative practice [is] consistent with the legislative intent." (*Horn* v. *Swoap* (1974) 41 Cal.App.3d 375, 382 [116 Cal.Rptr. 113]; *Lute* v. *Governing Board, supra,* 202 Cal.App.3d at p. 1183; *Napa Valley Educators' Assn.* v. *Napa Valley Unified School Dist.* (1987) 194 Cal.App.3d 243, 252 [239 Cal.Rptr. 395].)

Here, however, the "indication that the administrative practice [is] consistent with the legislative intent" is even stronger because the narrow scope of the regulations were specifically brought to the Legislature's attention. In the report of the legislative analyst to the joint legislative budget committee on the 1975-1976 fiscal budget, the analyst pointed out that the special circumstances program was funded in its first year for approximately $7.7 million, but actual spending was closer to $1.5 million. (Rep. of the Legis. Analyst to the Joint Legis. Budget Com., Analysis of the Budget Bill for Fiscal Year 1975-1976, p. 556.) In explaining the great disparity between estimated and actual expenditures under the program, the legislative analyst stated that one of the factors leading to a low level of expenditures was the fact that "the

regulations issued by the department are *extremely restrictive*, making it impossible for many prospective recipients to qualify for benefits." (*Ibid.*, italics added.) Nevertheless, despite this specific information, the Legislature took no action to broaden the scope of the benefits provided under the Department's regulations.

In summary, the term "unmet shelter needs" is ambiguous; nothing in the regulations clearly contradicts the statutory language; and the Legislature has acquiesced in the Department's administrative practices for more than 16 years, despite being informed that the regulations implementing the program are "extremely restrictive." In these circumstances, we believe the courts must defer to the administrative interpretation of the statutory language. Thus, we reverse paragraphs 1 through 3 of the preliminary injunction (which enjoin the Department from denying special circumstances assistance for specific reasons).

## III

■ Nevertheless, we affirm the portion of the preliminary injunction which orders the Department to employ reasonable means of giving notice of the availability of special circumstances assistance to all SSI recipients, and to form a plan for doing so. Section 10500 provides that "[e]very person administering aid under any public assistance program shall . . . perform his duties in such a manner as to secure for every person the amount of aid to which he is entitled, . . ." Moreover, the welfare laws are to be "actively enforced." (*Hansen* v. *Department of Social Services* (1987) 193 Cal.App.3d 283, 290 [238 Cal.Rptr. 232], quoting *Robbins* v. *Superior Court* (1985) 38 Cal.3d 199, 208 [211 Cal Rptr. 398, 695 P.2d 695].) Implicit in this duty is a requirement that the Department adequately advise SSI recipients of the rights and benefits to which they are entitled. (See *Diaz* v. *Quitoriano* (1969) 268 Cal.App.2d 807, 810-811 & fn. 6 [74 Cal.Rptr. 358].)

Plaintiffs presented ample evidence that the special circumstances program is not consistently publicized in all California counties, and that many SSI recipients are unaware of the program. As an extreme example, in San Bernardino County, where more that 31,000 SSI recipients lived in December 1988, not a single person received a special circumstances grant in that month or at any time in 1989. By contrast, Mendocino County, with less than 3,000 SSI recipients, granted 44 special circumstances applications in December 1988 alone. A 1977 survey indicated that only 17 percent of SSI recipients were aware of the special circumstances program and there is evidence this lack of awareness continued into the late 1980's. Moreover, all of the named plaintiffs in this class action were unaware of the special circumstances program until they heard about it from counsel.

Because the trial court's determination on this final point was based more on an examination of the evidence rather than an interpretation of a statute, we believe this portion of the preliminary injunction is entitled to the traditional deference accorded a trial court's power to grant a preliminary injunction. (See text, *ante*, at p. 1255.) We find no abuse of the trial court's discretion on this point.

## IV

Paragraphs 1 through 3 of the order granting preliminary injunction (which enjoin the Department from denying special circumstances assistance for specific reasons) are reversed. In all other respects, the order is affirmed. Costs are to be shared equally among the parties.

Merrill, J., and Chin, J., concurred.

A petition for a rehearing was denied April 15, 1992, and respondents' petition for review by the Supreme Court was denied June 11, 1992.