[No. B199859. Second Dist., Div. Two. June 3, 2008.]

RONNIE CINQUEGRANI et al., Plaintiffs and Respondents, v.
DEPARTMENT OF MOTOR VEHICLES et al., Defendants and Appellants.

## COUNSEL

Edmund G. Brown, Jr., Attorney General, Jacob A. Appelsmith, Assistant Attorney General, Elizabeth Hong and Jennie M. Kelly, Deputy Attorneys General, for Defendants and Appellants.

Schonbrun, Desimone, Seplow, Harris & Hoffman, Michael Morrison, Paul L. Hoffman; Joshua C. Needle; and Thomas E. Beck for Plaintiffs and Respondents.

## OPINION

**BOREN, P. J.**—May the state suspend the drivers' licenses of individuals convicted of "boating under the influence"? After independently reviewing the pertinent Vehicle Code and Harbors and Navigation Code provisions, we conclude that state law does not authorize the Department of Motor Vehicles to automatically suspend the drivers' licenses of individuals convicted of boating while intoxicated.[1] The trial court correctly enjoined the state from proceeding with the unauthorized license suspensions.

## FACTS

Plaintiff Ronnie Cinquegrani has numerous driving-related convictions. In 1996, he was convicted of driving under the influence (DUI): his driver's license was suspended for one month, and his ability to drive was restricted for an additional five months. In 1997, Cinquegrani was again arrested for DUI, and convicted of reckless driving: his license was suspended from November 1997 until September 1999. Cinquegrani's license was suspended from September to December 2002, and from December 2003 until October 2004, both times for failure to appear.

In 2005, Cinquegrani was arrested on the Colorado River for "boating under the influence" (BUI). He was charged with two misdemeanor violations

---

[1] In this opinion, undesignated statutory references are to the Vehicle Code. The Harbors and Navigation Code will be referred to as "Harb. & Nav. Code."

of the BUI statute. Cinquegrani entered a guilty plea to one of the charges; the other charge was dismissed. He was placed on summary probation.

Shortly after pleading guilty to BUI, Cinquegrani received a notice from the Department of Motor Vehicles (DMV), informing him that his California driver's license was suspended due to his BUI conviction. Cinquegrani hired counsel to contest the suspension. Counsel convinced a DMV employee that the suspension was invalid, and Cinquegrani's license was reinstated within three months.

Like Cinquegrani, plaintiff Bryan Royea has a record of driving-related offenses. In 2004, he was convicted of DUI, and his driver's license was suspended until March 2005. His license was suspended on two other occasions for failure to provide evidence of financial responsibility after a traffic collision. In 2006, Royea pleaded no contest to violating the BUI statute. Soon afterward, the DMV notified Royea that his driver's license was suspended for two years.

A class action was brought against the DMV "to vindicate the rights of California motorists who have had their licenses to operate a motor vehicle illegally suspended and/or revoked" due to BUI convictions. Plaintiffs Cinquegrani and Royea are the class representatives. They seek injunctive and declaratory relief, and damages for violations of their federal and state rights.

Plaintiffs requested a preliminary injunction, asking the court to bar the DMV from suspending the drivers' licenses of individuals with BUI convictions. The court granted plaintiffs' request for an injunction. The court found that (1) plaintiffs are likely to prevail on the merits because the DMV lacks statutory authority to suspend a driver's license solely to punish a BUI conviction; (2) plaintiffs will suffer irreparable harm without an injunction because "no complete substitute for the privilege of driving a personal vehicle currently exists"; (3) the balance of harm favors plaintiffs because the DMV presented no evidence that the injunction will increase the harm caused by either drunken boaters or drunken drivers; and (4) plaintiffs have no adequate remedy at law. The DMV was enjoined from suspending drivers' licenses following a BUI, and ordered to set aside current suspensions resulting from BUI convictions.

## DISCUSSION

### 1. *Appeal and Review*

Appeal lies from the order granting plaintiffs' request for a preliminary injunction. (Code Civ. Proc., § 904.1, subd. (a)(6); *Los Angeles Police*

*Protective League v. City of Los Angeles* (1995) 35 Cal.App.4th 1535, 1539 [42 Cal.Rptr.2d 23]; *Thornton v. Carlson* (1992) 4 Cal.App.4th 1249, 1255, fn. 5 [6 Cal.Rptr.2d 375].) To the extent that the grant or denial of a preliminary injunction requires statutory construction, the matter presents a question of law. (*Garamendi v. Executive Life Ins. Co.* (1993) 17 Cal.App.4th 504, 512 [21 Cal.Rptr.2d 578].) Our interpretation of the statutes is made independently of the trial court. (*Id.* at p. 513.)

Once the legal question is resolved, the trial court's decision to grant a preliminary injunction is reviewed for an abuse of discretion. If the evidence is in dispute, we interpret the facts in the light most favorable to the prevailing party. (*ReadyLink Healthcare v. Cotton* (2005) 126 Cal.App.4th 1006, 1016 [24 Cal.Rptr.3d 720].) If the ultimate facts are undisputed, the propriety of an injunction becomes a question of law. (*Cabrini Villas Homeowners Assn. v. Haghverdian* (2003) 111 Cal.App.4th 683, 688–689 [4 Cal.Rptr.3d 192].)

### 2. Statutory Interpretation

■ In construing a statute, the courts ascertain " 'the intent of the Legislature so as to effectuate the purpose of the law.' " (*People v. Snook* (1997) 16 Cal.4th 1210, 1215 [69 Cal.Rptr.2d 615, 947 P.2d 808] (*Snook*).) The words of the statute are the primary portal through which to glean the intent of the Legislature. "When looking to the words of the statute, a court gives the language its usual, ordinary meaning. [Citations.] If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs." (*Ibid.*) The statutory language " 'has been lobbied for, lobbied against, studied, proposed, drafted, restudied, redrafted, voted on in committee, amended, reamended, analyzed, reanalyzed, voted on by two houses of the Legislature, sent to a conference committee, and, after perhaps more lobbying, debate and analysis, finally signed "into law" by the Governor. The same care and scrutiny does not befall the committee reports, caucus analyses, authors' statements, legislative counsel digests and other documents which make up a statute's "legislative history." ' " (*Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1117–1118 [29 Cal.Rptr.3d 262, 112 P.3d 647].)

■ The BUI statute forbids the operation of a vessel while under the influence of an alcoholic beverage or drug. (Harb. & Nav. Code, § 655, subds. (b)–(d).) The penalties for a BUI conviction include fines, imprisonment, successful completion of an alcohol or drug education, training, or treatment program, and mandatory completion of a boating safety course. The penalties are increased if the convicted boater has suffered a DUI conviction within seven years; however, suspension of driving privileges is *not* listed as

a penalty for a BUI. (Harb. & Nav. Code, §§ 668, subds. (e)–(f), 668.1.) The parties do not challenge the validity of the BUI statute or its penalties.

 It is unlawful to drive a vehicle under the influence of alcohol or drugs. (§ 23152.) Among other penalties, a driver's license may be suspended following a DUI conviction: the DMV "shall immediately suspend or revoke the privilege of a person to operate a motor vehicle upon the receipt of an abstract of the record of a court showing that the person has been convicted" of a violation of sections 23152, 23153, or 23109. (§ 13352, subd. (a).) The parties do not challenge the validity of the DUI statute or its penalties.

When the DMV suspended plaintiffs' drivers' licenses following their BUI convictions, the agency was relying on a specific provision in the Vehicle Code that creates a "bridge" between the BUI and the DUI statutes. The provision reads, "For the purposes of this division and Chapter 12 (commencing with Section 23100) of Division 11, and Section 13352, a separate offense that resulted in a conviction of a violation of subdivision (b), (c), (d), or (e) of Section 655 of the Harbors and Navigation Code is a separate violation of Section 23152." (§ 23620, subd. (b).)

The parties dispute the meaning of section 23620. The DMV contends that the words "separate violation" in section 23620 mean that the BUI need only be unconnected or distinct to enable the DMV to suspend a driver's license following a BUI conviction. In other words, the DMV treats a BUI conviction as if it were a DUI conviction for purposes of punishment. By contrast, plaintiffs interpret the "separate violation" language to mean that a BUI conviction can be used only to enhance the penalties associated with a DUI conviction.

Section 23620 is part of an extensive DUI penalty scheme for recidivist drunk drivers contained in division 11.5 of the Vehicle Code, entitled "Sentencing for Driving While Under the Influence." (§ 23500 et seq.) The Supreme Court had occasion to consider this penalty scheme in the *Snook* opinion. The court was asked to determine the effect of the words "separate violations" as used in former section 23175, subdivision (a).[2] This language was part of a 1984 amendment changing the words "prior offenses" to the words "separate violations." The amendment subjects individuals to enhanced penalties for multiple offenses, regardless of whether the convictions were obtained in the same sequence as the offenses were committed. The amendments "close the loophole that allowed some repeat offenders to avoid

---

[2] Former section 23175 stated, "If any person is convicted of a violation of Section 23152 and the offense occurred within seven years of three or more *separate violations* of [any of three enumerated DUI offenses], . . . that person shall be punished by imprisonment . . . and by a fine . . . ." (Italics added.) Former section 23175 was repealed in 1998, and reenacted as section 23550.

enhanced punishment by 'pleading guilty to the second, third and fourth offenses before going to trial on the first offense.' " (*People v. Munoz* (2002) 102 Cal.App.4th 12, 18 [125 Cal.Rptr.2d 182].)

The Supreme Court observed that the Legislature "has employed the term 'separate violation' or 'separate violations' in all of the statutes increasing the penalties for repeat DUI offenders." (*Snook, supra*, 16 Cal.4th at p. 1216.) The court defined a " 'separate' violation [as] a violation that is 'unconnected; not united or associated; distinct.' " (*Ibid.*) The court recognized a legislative finding and declaration stating that " 'the intent of the act enacting this section, in changing the word "prior" to the word "separate . . ." [is] to provide that a person be subject to enhanced mandatory minimum penalties for multiple offenses . . . .' " (*Id.* at p. 1217.) In short, "A 'separate violation' as it appears in the penalty enhancement provisions triggered by only one DUI conviction . . . clearly describes the relationship between the present offense and the offense triggering an enhanced penalty." (*Id.* at p. 1216.)

■ Viewed in light of the DUI sentencing scheme as a whole—as described by the Supreme Court in *Snook*—the words "separate violation" in section 23620 have a particular meaning. They signify that a conviction of a drunken boating offense will result in an enhanced DUI penalty. In this instance, if plaintiffs are convicted of a DUI, their existing BUI convictions will serve to enhance their DUI punishment.

■ Under the DMV's interpretation, the "separate violation" language means a "conviction"; in other words, the DMV has rewritten the statute to read that "a conviction of . . . [Harb. & Nav. Code section 655] is a *conviction* of Section 23152." If the Legislature had intended a *conviction* of Harb. & Nav. Code section 655 be equivalent to a *conviction* of Vehicle Code section 23152, it would have said so in precisely those terms. The DMV may suspend or revoke driving privileges only upon a "showing that the person has been *convicted* of a violation of Vehicle Code Section 23152 . . . ." (§ 13352, subd. (a), italics added.)

■ We are required "to give effect and significance to every word and phrase of a statute." (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 476 [66 Cal.Rptr.2d 319, 940 P.2d 906].) Section 23620 states that "a separate offense that *resulted* in a conviction" of Harb. & Nav. Code section 655 is a separate violation of Vehicle Code section 23152. (§ 23620, subd. (b), italics added.) By using the past tense, the Legislature is referring to a BUI conviction that occurred in the past, which is to be used to enhance the penalty for a current DUI prosecution. The manner in which the DMV reads the statute substitutes the present tense for the past tense, so that a *current* BUI prosecution and conviction effectively *"results"* in a violation of the DUI statute. Section 23620 does not bear rewriting to achieve the outcome sought by the DMV.

■ Section 23620 states that *"for the purposes of"* division 11.5 (sentencing for driving while under the influence), chapter 12 of division 11 (public offenses against rules of the road), and section 13352 (administrative penalties for DUI convictions), an offense that resulted in a conviction of Harb. & Nav. Code section 655 is a separate violation of Vehicle Code section 23152. (§ 23620, subd. (b), italics added.) Section 23620 is thus aimed at driving offenses, not boating offenses. Boating offenses have their own punishment scheme, in Harb. & Nav. Code section 668, which does not list suspension of driving privileges as a permissible punishment. The reference to Harb. & Nav. Code section 655 in the Vehicle Code is for the purposes of enhancing the penalty for a DUI conviction, not as separate punishment for a BUI.

Tellingly, the DMV has drafted proposed legislative amendments to numerous statutes—including section 23620—that would expressly enable the agency to suspend the drivers' licenses of individuals convicted of BUI. We have taken judicial notice of proposed legislative amendments prepared by the DMV in 2004, which are part of its administrative records. (Evid. Code, §§ 452, subd. (c), 459, subd. (a); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 842, fn. 3 [107 Cal.Rptr.2d 841, 24 P.3d 493]; *Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 374–375, fn. 4 [87 Cal.Rptr.2d 654, 981 P.2d 499].)

■ In its proposed legislation, the DMV expressly acknowledged that "the plain language of CVC Section 23620 does *not* provide the authority to take any action against the driving privilege of a person who is convicted of a violation of H&N Code Section 655(b), (c), (d), (e), or (f) . . . ." (Italics added.) That, of course, is precisely the opposite position from the one the agency is presently taking in this appeal. The agency requested "a technical fix that would enable the DMV to carry out its mandated duties to suspend the drivers' licenses of individuals convicted under California's DUI statutes whether the violations occur in a vessel or on land."[3] The DMV's proposed legislation is consistent with our interpretation of section 23620, as now written; i.e., the statute does not authorize the suspension of a driver's license as punishment for a BUI.

The DMV expresses concern that individuals who pilot a vessel under the influence are also likely to drive a vehicle under the influence, and that the

---

[3] The legislative amendments proposed by the DMV contain the type of language that is missing from the current statutes. For example, the proposed amendment to section 23620 states that a person convicted of BUI "shall be subject to the same driving privilege suspension and/or revocation, the same requirements for a restricted driver's license, and the same requirements for driver's license reinstatement as a conviction for Section 23152." Likewise, section 13352 would be amended to provide that the DMV shall immediately suspend or revoke the driving privilege upon conviction of Harb. & Nav. Code section 655.

agency should not be hampered in its ability to limit the driving privileges of individuals with BUI convictions, for the safety of the public. Certainly, the criminal records of plaintiffs Cinquegrani and Royea bear out the DMV's concerns about drunken drivers and drunken boaters. However, the answer to this concern is not to misconstrue section 23620 to give DMV powers that the Legislature did not authorize. Rather, the answer is to introduce legislation such as that drafted by the DMV in 2004, which would plainly give the DMV the authority to suspend drivers' licenses for individuals convicted of BUI.

### 3. *Grounds for an Injunction*

■ The decision to issue a preliminary injunction requires that the court weigh two factors: "the likelihood the moving party will ultimately prevail on the merits, and the relative interim harm to the parties from the issuance or nonissuance of the injunction." (*Hunt v. Superior Court* (1999) 21 Cal.4th 984, 999 [90 Cal.Rptr.2d 236, 987 P.2d 705].) "The trial court's determination must be guided by a 'mix' of the potential-merit and interim-harm factors; the greater the plaintiff's showing on one, the less must be shown on the other to support an injunction." (*Butt v. State of California* (1992) 4 Cal.4th 668, 678 [15 Cal.Rptr.2d 480, 842 P.2d 1240].) ■ An injunction may be granted in a class action, even if the class has not been certified. (Code Civ. Proc., § 527, subd. (b).)

#### a. *Plaintiffs' Likelihood of Prevailing on the Merits*

■ Plaintiffs are likely to prevail upon the merits because the DMV does not have authority to suspend drivers' licenses after a BUI conviction. A driver's license cannot be suspended without due process of law. (*Bell v. Burson* (1971) 402 U.S. 535, 539 [29 L.Ed.2d 90, 91 S.Ct. 1586].) The DMV must issue licenses to those who are lawfully entitled to them. (§ 12811, subd. (a)(1)(A).) Once a license issues, an administrative decision to suspend or revoke it affects a fundamental right. (*Smith v. Department of Motor Vehicles* (1986) 179 Cal.App.3d 368, 373, fn. 2 [224 Cal.Rptr. 543].)

■ Plaintiffs—and those similarly situated—do not have constitutional notice that a BUI conviction will automatically result in the suspension of their drivers' licenses, because there is no state law that authorizes the DMV to do so.[4] The DMV's misinterpretation of a statute does not provide a legal

---

[4] Apart from lacking statutory notice, plaintiffs also lacked actual notice of the DMV's intention to suspend their licenses for a BUI conviction. The 2006 California Driver Handbook advises drivers that convictions pursuant to the Harb. & Nav. Code "are placed on your driving record and will be used by the court to determine 'prior convictions' for motor vehicle DUI sentencing." That is to say, the Driver Handbook published by the DMV does not inform

basis for an otherwise unauthorized punishment. "Administrative action that is not authorized by, or is inconsistent with, acts of the Legislature is void," which is true of actions that alter, amend, enlarge, or impair a statute. (*Association for Retarded Citizens v. Department of Developmental Services* (1985) 38 Cal.3d 384, 391 [211 Cal.Rptr. 758, 696 P.2d 150].) Drivers whose licenses have been or will be automatically revoked by the DMV following a BUI conviction are deprived of their due process rights by the agency's void actions.

### b. *Harm to the Parties*

Harm may be presumed when a driver's license is suspended. Once issued, a driver's license "may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees." (*Bell v. Burson, supra*, 402 U.S. at p. 539.) "In our present travel-oriented society, the retention of a driver's license is an important right to every person who has obtained such a license. . . . [¶] Whether a driver's license is required only for delivering bread, commuting to work, transporting children or the elderly, meeting medical appointments, attending social or political functions, or any combination of these or other purposes, the revocation or suspension of that license, even for a six-month period, can and often does constitute a severe personal and economic hardship." (*Berlinghieri v. Department of Motor Vehicles* (1983) 33 Cal.3d 392, 398 [188 Cal.Rptr. 891, 657 P.2d 383]; see *Perkey v. Department of Motor Vehicles* (1986) 42 Cal.3d 185, 199 [228 Cal.Rptr. 169, 721 P.2d 50] ["An individual can no more participate in the economic life of contemporary society without a driver's license than without a bank account or telephone"].)

Plaintiff Royea declares that the suspension of his license interferes with his construction business, which requires onsite management at locations in Northern and Southern California. He is unable to carry out personal obligations such as transporting relatives to school or medical appointments, or do grocery shopping for his family. Plaintiff Cinquegrani also owns a construction company, a job that requires him to drive to worksites and to suppliers on a daily basis. He is unable to pick up his children after school every day.

By contrast, there is no harm to the DMV. The agency is imposing an unauthorized punishment on the public. We reject the DMV's argument that each affected individual must bring a petition for a writ of mandate after his license is suspended. Mandate is not an adequate remedy because it

Californians that their licenses will be suspended for a BUI; instead, the handbook gives the same reading to the statutes that we have—a BUI conviction will be used only to enhance a DUI sentence.

requires every individual with a BUI conviction to fight the DMV in court for imposing a punishment that is unauthorized by state law. Injunctive relief is the appropriate remedy in this case.

## DISPOSITION

The judgment is affirmed. This court's order of July 24, 2007, granting the DMV's petition for writ of supersedeas and staying the preliminary injunction is dissolved.

Ashmann-Gerst, J., and Chavez, J., concurred.

A petition for a rehearing was denied July 1, 2008, and appellants' petition for review by the Supreme Court was denied September 10, 2008, S165101. Kennard, J., was of the opinion that the petition should be granted.