Filed 6/7/13  Wall v. Shiomoto CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PHILIP WALL,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>JEAN SHIOMOTO, as Chief Deputy<br>Director, etc.,<br><br>    Defendant and Respondent. | G047428<br><br>(Super. Ct. No. 30-2012-00570477)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Franz E. Miller, Judge.  Affirmed.

Christian Jensen; Chad Firetag for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Alicia M. B. Fowler, Assistant Attorney General, Michael E. Whitaker and Michael J. Hui Deputy Attoneys General, for Defendant and Respondent.

\*                \*                \*

After providing Phillip Wall an administrative hearing, the Department of Motor Vehicles (DMV) suspended his driver's license subsequent to his arrest for violating Vehicle Code[1] section 23152. Wall pled guilty to the new offense and admitted he suffered a prior conviction for violating section 23152. The court ordered Wall to complete a driving-under-the-influence alcohol program and when the DMV received notification of Wall's enrollment, it set aside the suspension and issued Wall a restricted driver's license. The DMV subsequently suspended Wall's license again when it received notice Wall did not successfully complete the program. (§ 13352, subd. (e).) Section 14101 provides that a driver is not entitled to a hearing when the DMV is required to suspend the driver's license, as the DMV was in this case.

Wall contends the DMV's suspension of his license violated due process because he was not provided a hearing to determine whether his termination from the alcohol program was arbitrary or capricious. We conclude that even if a driver is entitled to a hearing to demonstrate termination from the program was arbitrary or capricious, Wall's petition did not allege facts tending to indicate his termination from the alcohol program was arbitrary or capricious. Consequently, we affirm the superior court's order denying relief on Wall's petition for a writ of mandate.

I

FACTS

On July 6, 2011, Wall was arrested for driving under the influence of alcohol. (§ 23152, subd. (a).) The DMV suspended Wall's driver's license after an administrative hearing, pursuant to section 13352. Wall pled guilty to driving under the influence in Orange County Superior Court case No. 11WM10159 on November 3, 2011, and admitted he suffered a prior conviction for a violation of section 23152 on March 16, 2007. The court placed Wall on probation for a period of five years. Among the

---

[1] All undesignated section references are to the Vehicle Code unless otherwise stated.

2

conditions imposed on the grant of probation, Wall was ordered to attend and complete an 18-month program for drivers with multiple driving under the influence convictions. Wall enrolled in the court-ordered program, installed an ignition interlock device on his vehicle, and obtained proof of insurance for the vehicle.

It appears the DMV reinstated Wall's driving privilege on November 29, 2011, and he was issued a restricted driver's license based on his enrollment in the court-ordered program. However, on February 10, 2012, the alcohol program Wall had been attending sent the DMV notice of Wall's noncompliance with the program. The notice states "The person identified has failed to comply with the rules and regulations of this DUI treatment program." According to Wall, he missed two classes and when he showed up late for another class, he was asked to leave. The DMV suspended Wall's driver's license on February 21, 2012 through August 28, 2013, due to Wall's failure to comply with the terms of the driving under the influence alcohol program.

Wall subsequently appeared in court on case No. 11WM10159 and was ordered reinstated into the alcohol program. He then filed a petition for a writ of mandate seeking to have the DMV set aside its suspension of his license and to reinstate his restricted driver's license. The superior court denied relief, stating that when a license is suspended because a multiple offender is terminated from the court-ordered program for noncompliance, due process would at most entitle the individual to a hearing to determine whether the termination from the program was fraudulent or completely capricious. The court found Wall admitted he missed two classes, was tardy for a third, and did not claim these violations were insufficient to terminate him from the alcohol program. Wall appeals from the denial of his petition for a writ of mandate.

II

DISCUSSION

Wall filed a petition for a writ of mandate in the Orange County Superior Court, contending the DMV's suspension of his license, after it received notification he

3

had been terminated from the court-ordered program, denied him due process in that he was not provided a hearing by the DMV before or after the suspension. According to Wall, he was entitled to a hearing to determine whether the suspension was warranted or whether it was the result of an arbitrary or capricious decision of a traffic clerk. In his superior court writ petition, Wall alleged he spoke to the director of the alcohol program who said "she could have intervened and prevented the eventual suspension."

A petition for a writ of mandate under section 1085 of the Code of Civil Procedure "may be issued by any court to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled, and from which the party is unlawfully precluded by that inferior tribunal, corporation, board, or person." (Code Civ. Proc., § 1085, subd. (a).) Mandamus may generally only be used to compel performance of a purely ministerial duty. (*Alejo v. Torlakson* (2013) 212 Cal.App.4th 768, 780.) "'Generally, a writ will lie when there is no plain, speedy, and adequate alternative remedy; the respondent has a duty to perform; and the petitioner has a clear and beneficial right to performance.' [Citation.]" (*Pomona Police Officers' Assn. v. City of Pomona* (1997) 58 Cal.App.4th 578, 584.) We determine de novo whether the agency had a ministerial duty to act in accordance with a statute. (*Anthony v. Snyder* (2004) 116 Cal.App.4th 643, 659.)

In today's society, driving is a fundamental property interest of licensed drivers (*Peretto v. Department of Motor Vehicles* (1991) 235 Cal.App.3d 449, 459) and the state cannot suspend a driver's license without due process of law. (*Cinquegrani v. Department of Motor Vehicles* (2008) 163 Cal.App.4th 741, 750.) In fact, in certain situations the Vehicle Code expressly provides for an administrative hearing prior to a license suspension going into effect. (See e.g., §§ 13353, subds. (a), (e) [administrative hearing provided when ground for suspension is driver's refusal to take a chemical test];

4

13353.2, subds. (a), (c) [administrative hearing provided when suspension based on amount of alcohol in system at time of driving]; 14100, subd. (a) ["Whenever the department has given notice, or has taken or proposes to take action under Section 12804.15, 13353, 13353.2, 13950, 13951, 13952, or 13953, the person receiving the notice or subject to the action may, within 10 days, demand a hearing which shall be granted, except as provided in Section 14101"].) The Legislature saw fit not to provide a driver with an administrative hearing when the license suspension is based on the driver having suffered two driving under the influence convictions within 10 years—a condition that ordinarily requires suspension of the driver's license (§ 13352, subd. (a)(3))—, a restricted driver's license was issued on proof the individual enrolled in a court-ordered driving-under-the-influence program, and the DMV received notice that the individual did not successfully complete the alcohol program. (§ 13352, subd. (e).)

"Under section 14101, subdivision (a), a driver is not entitled to a hearing if the DMV's action 'is made mandatory by this code.'" (*Draeger v. Reed* (1999) 69 Cal.App.4th 1511, 1524.)[2] A suspension imposed pursuant to section 13352, subdivision (e) [failure to complete a court-ordered driving-under-the-influence alcohol program], is mandatory "upon receipt of notification from the driving-under-the-influence program that the person has failed to comply with the program's requirements." (§ 13352, subd. (e).)

A pre-suspension hearing is not required "where the threat to public safety is sufficiently obvious to justify immediate termination. [Citation.]" (*Pollack v. Department of Motor Vehicles* (1985) 38 Cal.3d 367, 380.) That threat is evident in the present case. Wall was convicted of violating section 23152 in 2007. He violated that

---

[2] "A person is not entitled to a hearing in either of the following cases: [¶] (a) If the action by the department is made mandatory by this code. [¶] (b) If the person has previously been given an opportunity with appropriate notice for a hearing and failed to request a hearing within the time specified by law." (§ 14101.)

section again in 2011. That alone was enough to suspend Wall's license. (§ 13352, subd. (a)(3).)[3] Yet, Wall was provided a second chance when the DMV issued him a restricted license based on his enrollment in a driving-under-the-influence program after his second conviction for violating section 23152. Wall's repeated violation of section 23152 demonstrated he posed a danger to the public, and his termination from the alcohol program reinforced the idea that Wall continued to pose a danger to the public.

Still, due process *may* require a hearing even when the applicable statute does not. (See *Horn v. County of Ventura* (1979) 24 Cal.3d 605, 616 [due process requirements rooted in the constitution, not in statute].) Even under section 14101 a driver whose license is suspended pursuant to a statute making suspension mandatory is entitled to "a prompt hearing before a representative of the DMV if he believes his suspension is based on inaccurate DMV records." (*Pollack v. Department of Motor Vehicles*, *supra*, 38 Cal.3d at p. 380, fn. omitted.)

Wall argues he should have been provided an administrative hearing. He put forth a hypothetical situation to demonstrate why due process should require a hearing when a license is suspended pursuant to section 13352, subdivision (e): "suppose a DUI program had two 'John Smiths' in its class. Smith #1 was not in compliance, but Smith #2 was. Suppose further that the DUI clerk accidentally and mistakenly sends the non-compliance notice to the DMV for Smith #2 instead of Smith #1." This example fits the conclusion in *Pollack* that section 14101 does not preclude a hearing when "DMV's records are inaccurate or if there is a mistake as to identity." (*Pollack v. Department of Motor Vehicles, supra*, 38 Cal.3d at p. 380, fn. 8.) Section 14101 would not preclude a hearing in that instance because the DMV is not required to suspend a license based on an inaccurate record. (*Ibid*.) Thus, under *Pollack*, a driver is entitled to an administrative hearing concerning the suspension of his driver's license under section 13352,

_____

[3] As noted above, Wall's license was initially suspended pursuant to section 13352, subdivision (a)(3) after he was provided an administrative hearing.

6

subdivision (e) if there is evidence indicating the DMV's records are inaccurate or a case of mistaken identity. (*Ibid.*)

In determining what process is due, the court considers and balances "three distinct factors: (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of that interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the financial and administrative burdens which would be entailed by additional safeguards. [Citations.]" (*Peretto v. Department of Motor Vehicles*, *supra*, 235 Cal.App.3d at p. 460.) We have already noted the driving privilege is fundamental. (*Cinquegrani v. Department of Motor Vehicles*, *supra*, 163 Cal.App.4th at p. 750.) The risk of an erroneous deprivation without an administrative hearing is minimal when the license has been suspended in conformance with section 13352, subdivision (e), and there is no showing of a mistake of identity or that the DMV's records are inaccurate. In such a case, the driver will have already been established to have been a second time violator of section 23152, a danger to society, and someone who failed to comply with terms of the probation that qualified him to have a restricted license. Requiring administrative hearings on all suspensions made pursuant to section 13352, subdivision (e) would entail undue financial and administrative burdens in reviewing the paperwork sent by alcohol programs to the DMV each time a second time violator is terminated from the program. After all, the mere fact that the driver has suffered two convictions within the statutory period made the driver eligible for suspension of his license, but for enrollment in the driving-under-the-influence program. (§ 13352, subd. (a)(3).) On the other hand, when it appears the DMV's paperwork is inaccurate or there is an issue of mistaken identity, the potential for an erroneous decision is increased and, since such cases are presumably rare, providing administrative hearings in these limited situations does not impose any significant administrative burden or cost on the state.

7

Wall's petition for a writ of mandate was not supported by admissible evidence demonstrating his termination from the program was arbitrary and capricious or that paperwork reflecting his termination was sent to the DMV in error. Although he had purportedly been asked to leave the alcohol class when he arrived for class five minutes late, he had already missed two other classes. The program director's hearsay statement to Wall that she was unaware of the facts surrounding the noncompliance notice and that had she known about the incident before the notice was sent to the DMV she could have prevented the suspension, was not only inadmissible (Evid. Code, § 1200), it did not support an inference that there was anything improper about Wall's termination from the program. Needless to say, Wall did not attempt to argue his case involved mistaken identity, either.

Because Wall did not allege any facts which, if true, would mean the DMV was not required to suspend his license under section 13352, subdivision (e), due process did not require the DMV to provide Wall an administrative hearing in connection with the suspension of his license. Accordingly, we affirm the superior court's judgment denying relief.

## III

The judgment is affirmed. The DMV shall recover its costs on appeal.

MOORE, J.

WE CONCUR:


O'LEARY, P. J.


RYLAARSDAM, J.

8