[No. A061255. First Dist., Div. One. May 26, 1994.]

MARINA GREEN HOMEOWNERS ASSOCIATION, Plaintiff and Appellant, v.
STATE FARM FIRE AND CASUALTY COMPANY, Defendant and Respondent.

## COUNSEL

Trucker, Huss, Klamm, & Sacks, Linda E. Klamm and William A. Hickey for Plaintiff and Appellant.

Thornton, Taylor, Downs, Becker, Tolson & Doherty, Clarke B. Holland and Michael F. Scully for Defendant and Respondent.

## OPINION

**STEIN, J.**—Marina Green Homeowners Association (the Association) filed a complaint against State Farm Fire and Casualty Company (State Farm). As

relevant here, the complaint stated several causes of action, each was premised on a claimed breach of duty by State Farm to provide earthquake insurance to the Association. The superior court granted summary judgment to State Farm, determining that it was under no such duty. We will affirm.[1]

### Factual and Procedural Background

The Association is a San Francisco homeowners association formed to administer an 18-unit residential condominium structure (the Marina Green project). The issue in this case is whether an insurance company owes any duty to a homeowners association, or the members thereof, to provide earthquake insurance covering a condominium structure, as opposed to the airspace comprising each individual condominium unit within that structure. The distinction between the two is explained by Civil Code section 1351, subdivision (f), defining the interests in a condominium project: "A 'condominium project' means a development consisting of condominiums. A condominium consists of an undivided interest in common in a portion of real property coupled with a separate interest in space called a unit . . . ." Each condominium owner in the Marina Green project, therefore, is the sole owner of a unit, i.e., space, and also is a common owner of the structure encompassing that space.

Insurance Code section 10081, enacted in 1984, provides: "No policy of residential property insurance may be issued or delivered or, with respect to policies in effect on the effective date of this chapter, initially renewed in this state by any insurer unless the named insured is offered coverage for loss or damage caused by the peril of earthquake as provided in this chapter. That coverage may be provided in the policy of residential property insurance itself, either by specific policy provision or endorsement, or in a

---

[1]The procedural history of this action is somewhat complicated. The Association first filed a complaint stating seven causes of action against State Farm and against its sales agent Ray Stewart, each premised on the claimed duty to provide earthquake insurance. The superior court granted summary adjudication to State Farm on the grounds that it had no such duty. The Association then filed an amended complaint. The first seven counts of this complaint were the same as those stated in the first complaint. A number of new counts were added, however, stating causes of action against both State Farm and Stewart. The parties then settled the matter as to these new causes of action, and further settled the entire case as to Stewart. The superior court subsequently granted summary judgment to State Farm, finding that its order for summary adjudication had resolved the issue of State Farm's duty to the Association as a matter of law, and that it therefore was impossible for State Farm to be liable to the Association on any of the remaining causes of action.

separate policy or certificate of insurance which specifically provides coverage for loss or damage caused by the peril of earthquake alone or in combination with other perils."[2]

Sometime after January 1986, the Association entered into a contract with State Farm for residential property insurance covering the condominium structure. State Farm did not offer the Association earthquake coverage at that time, nor did it offer the Association earthquake coverage when the insurance policy was renewed, on an annual basis. On or around January 1988, the Association requested State Farm's agent both to renew the residential property insurance and to obtain a quote for adding earthquake insurance to that policy. State Farm's agent advised the Association that State Farm would not agree to provide earthquake coverage for the condominium project. On October 17, 1989, the project was severely damaged by an earthquake. The Association filed a claim with State Farm for the damage, and when its claim was denied, requested that the insurance policy be reformed to provide earthquake coverage. State Farm refused on the grounds that it had no obligation to offer earthquake coverage "to a condominium association for a building of over four dwelling units." the Association thereafter filed the instant action.

## DISCUSSION

Section 10081, quoted above, requires that any insurer offering or renewing a policy of residential property insurance, also offer to provide earthquake insurance. The question here, therefore, is whether for purposes of the duty imposed by section 10081, a "policy of residential property insurance" includes insurance issued to a condominium homeowners association to cover the common interest in the condominium project's structure, as distinguished from the airspace owned by each individual condominium owner. The resolution of this issue requires us to interpret subdivision (a), section 10087: "(a) As used in this chapter 'policy of residential property insurance' shall mean a policy insuring individually owned residential structures of not more than four dwelling units, *individually owned condominium units*, or individually owned mobilehomes, and their contents, located in this state and used exclusively for residential purposes or a tenant's policy insuring personal contents of a residential unit located in this state. 'Policy of residential property insurance,' as defined, shall not include insurance for real property or its contents used for any commercial, industrial or business purpose, except a structure of not more than four dwelling units rented for individual residential purposes." (Italics added.)

---

[2]Except as otherwise indicated, all statutory references are to California's Insurance Code.

The Association contends here, as it did in the trial court, that the phrase "individually owned condominium units" should be construed as including not only the individually owned airspace of a particular unit, but the jointly owned structure of the condominium project.

The relevant rules of statutory interpretation are settled. First, in interpreting statutory meaning, the appellate court makes an independent review. (*Botello* v. *Shell Oil Co.* (1991) 229 Cal.App.3d 1130, 1134 [280 Cal.Rptr. 535].) In conducting that review, ". . . we begin with the cardinal rule applicable to that task: the court must ascertain the legislative intent so as to effectuate the purpose of the law. [Citations.] [¶] If the statutory language is unambiguous, legislative intent is determined from the plain meaning of the language itself. [Citations.]" (*Id.* at pp. 1134-1135.) Further, " 'in attempting to ascertain the legislative intention effect should be given, whenever possible, to the statute as a whole and to every word and clause thereof, leaving no part of the provision useless or deprived of meaning.' " (*Gay Law Students Assn.* v. *Pacific Tel. & Tel. Co.* (1979) 24 Cal.3d 458, 478 [156 Cal.Rptr. 14, 595 P.2d 592].) The Association, accordingly, argues that its construction of section 10087 is supported (1) by the plain meaning of the language of the statute, (2) by the legislative intent, and (3) by general rules of statutory construction. We disagree.

As noted above, Civil Code section 1351, subdivision (f) contains an explanation of the ownership interests of a condominium project. Each unit, defined as an "interest in space," is separately owned. The structure itself is owned, not individually, but jointly. We presume that the Legislature was aware of this definition and explanation when it enacted section 10087. In specifying that insurance be offered to cover condominium *units*, therefore, section 10087 on its face refers to interests in the spaces inside the condominium's structure. The further specification that insurance be offered to cover *individually* owned units is consistent with the differentiation between that interest which can be owned separately, i.e., units, and that interest which only can be owned jointly, i.e., the structure. It follows that the plain meaning of section 10087 is that the term "policy of residential property insurance" is defined as including a policy covering the interest of an individual in the space of each unit, and presumably in the contents and fixtures, etc. within that space, but not the interest of the joint owners in the structure.

In addition, from our review of the legislative materials, we cannot conclude, as the Association argues, that the Legislature must have intended that owners of condominiums have coverage not only for their units, but for

the structure itself. The legislation followed lobbying by insurance companies responding to decisions in cases holding that where at least one of the concurrent causes of loss is covered in an "all risk" insurance policy, the loss is covered notwithstanding that other concurrent causes are expressly excluded. (See, e.g., *Premier Ins. Co.* v. *Welch* (1983) 140 Cal.App.3d 720 [189 Cal.Rptr. 657].) The legislation was adopted as a compromise between avoiding insurer insolvency in the event of a major catastrophe, and making earthquake insurance available to all interested persons. As explained by Assemblyman Alister McAlister in introducing the relevant bill, "AB 2865 is designed to prevent possible massive insurance company insolvencies in the event of a major earthquake in California. In return, it provides that earthquake insurance be made available to every homeowner, tenant, condominium and mobile homeowner in the state. [¶] Under the bill, those who do not wish to buy earthquake coverage do not have to buy it, or bear a part of the cost for such coverage. [¶] In essence, the bill is simply intended to provide that those who buy earthquake insurance *have* earthquake insurance and those who do not buy earthquake insurance do not have earthquake insurance."

The Association argues that Assemblyman McAlister's statement discloses a legislative intent to distinguish between individual owners, i.e., residential owners, less able to bear the financial burden of earthquake loss, and owners more able to do so. As additional support for its theory of legislative intent, the Association points out that section 10087 expressly excludes from the definition of "policy of residential property insurance," insurance for any industrial or business purpose "except a structure of not more than four dwelling units."

The Association's theory is undermined by the fact that the statutory definition of residential property insurance fails to encompass all forms of individual residential ownership. Thus, it does not include policies covering individually owned residential structures of more than four units, whether or not one unit is inhabited by the owner. It does not include policies covering insurance for that unit alone. It does not include policies covering structures held through other forms of joint ownership such as cooperatives or tenancies-in-common. State Farm, pointing out that a purpose of the legislation was to prevent insurer insolvency, asserts that these limitations disclose a legislative intent to limit mandatory coverage to smaller structures, an intent it claims will further that purpose.

We are unable to find a clear expression of legislative intent in the legislative material. We therefore cannot say without reservation that the

Legislature either must have intended that all residential property owners be able to obtain earthquake insurance, or that it intended to protect insurance companies at the expense of persons owning certain interests in residential property. The fact that the legislation does not protect the interests of all residential property owners, however, certainly supports the latter possibility, particularly when it is considered that individuals owning structures of greater than four units and groups jointly owning a building, tend to be in a stronger bargaining position than individuals owning separate structures of four or fewer units. In addition, we can see difficulties resulting from a contrary conclusion. An insurer would be faced with a hard dilemma, for example, if only a fraction of residents in a particular condominium project decided to purchase earthquake insurance and an earthquake affected the entire structure. We therefore conclude that the legislative history, and the legislation itself, discloses an intent to limit mandatory coverage to structures of four or fewer units.

This conclusion is consistent with the rules of statutory construction. The Association, noting that State Farm rejected its application for insurance in part on the grounds that the Marina Green project contained more than four units, argues that a straightforward reading of section 10087 places the four-unit limitation only on individually owned residential structures. We agree. The phrase "individually owned condominium units" should be read as establishing a separate category of residential property insurance; however, "individually owned condominium units" does not include the structure of the condominium project. (Civ. Code, § 1351, subd. (f).)

Having so concluded, we need not and do not consider the parties' other contentions.

The judgment is affirmed.

Strankman, P. J., and Dossee, J., concurred.