Filed 2/17/23  Truck Insurance Exchange v. Cal. Capital Insurance Co. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| TRUCK INSURANCE EXCHANGE et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> CALIFORNNIA CAPITAL INSURANCE COMPANY, <br><br> Defendant and Appellant. | B311900 <br><br> (Los Angeles County Super. Ct. No. BC546052) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Yvette M. Palazuelos and David S. Cunningham III, Judges.  Affirmed.

Ropers Majeski and Susan J. Welde for Plaintiffs and Respondents.

Grant, Genovese & Baratta and Lance D. Orloff for Defendant and Appellant.

_____

# INTRODUCTION

In this equitable contribution action, California Capital Insurance Company ("California Capital") appeals from the trial court's judgment in favor of Truck Insurance Exchange ("Truck") and Farmers Insurance Exchange ("Farmers") (collectively, "Respondents"). The court granted summary adjudication against California Capital on the duty to defend its insured, a condominium management entity, in the underlying construction defect actions and on the duty to indemnify. The court awarded $1.1 million in equitable contribution to Respondents, who defended and settled the underlying lawsuits. California Capital contends its policy insured distinct risks from Respondents' policies and provided no potential or actual coverage for the underlying liability. We affirm.

# FACTUAL AND PROCEDURAL HISTORY

A. *The Parties and Properties*

The underlying facts are not in dispute. Jon Williams, and his company WK Development, formed a conglomerate of affiliated developer entities and also formed the relevant insured party, an entity called Davlyn Investments, Inc. ("Davlyn"). In May 2004 the developer entities purchased three apartment properties named Saddleback, Palm Lake, and Palermo. Davlyn then embarked on a joint development venture with the developer entities to convert the three apartment complexes into condominiums. Davlyn served as property manager during the condominium conversion process. The conversion projects included construction work on the buildings, creation of

homeowners associations (HOAs), Declarations of Covenants, Conditions and Restrictions (CC&Rs) for each complex, and the marketing and sale of the condominium units. The CC&Rs provide that the properties' common areas are "owned in undivided interests by the Owners of the Residential Units."[1] An "Ownership of Condominium" provision states: "Ownership of each Condominium within the Project shall include (a) a Residential Unit, (b) an undivided interest in the Common Area located within the Residential Module in which the Residential Unit is situated, as shown on the Condominium Plan and the Deed to the Condominium."

In addition to its property management responsibilities, Davlyn managed ownership sales and rental management of unsold units in two of the properties after the conversion.

The equitable contribution judgment from which California Capital appeals results from litigation involving two of the properties, Saddleback and Palm Lake.

---

[1] The CC&Rs define "Common Area" to include all areas designated as "Common Area" in the properties' respective Condominium Plans, as well as "the bearing walls located within a Residential Unit," "all structural components within a Residential Unit which may be required for the support of the building within which the Residential Units are located (except for the finished surfaces)," and "Utility Facilities" (items such as the heating and air conditioning systems, pool equipment, sewer and sprinkler systems).

B. *Respondents' Policies*

In conjunction with the condominium conversion projects, Respondents issued corresponding sets of liability insurance policies for each complex. Farmers issued an Apartment Owners Policy to the developers for Palm Lake covering the period March 31, 2004 to March 31, 2005, and a Condominium Owners Policy to the Palm Lake HOA effective April 5, 2005 to April 5, 2006 (renewed through April 5, 2009). Truck similarly issued an Apartment Owners Policy for Saddleback effective May 27, 2004 to May 27, 2005 (renewed through March 17, 2009), and a Condominium Owners Policy to the Saddleback HOA, effective June 2, 2005 to June 2, 2006 (renewed through May 27, 2013).

In the underlying construction defect actions, Farmers defended Davlyn under its Condominium Owners Policy for Palm Lake and Truck defended Davlyn under its Condominium Owners Policy for Saddleback. On appeal, the parties do not dispute Respondents' policies covered Davlyn. Under virtually identical policies, Respondents agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' . . . to which this insurance applies[,]" if the "'property damage' is caused by an 'occurrence'" that occurs during the policy period. The policies define "'occurrence'" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

Respondents' policies also specified that their covered insureds included "[t]he developer in the developer's capacity as a unit-owner, but only with respect to the developer's liability arising out of: [¶] a. The ownership, maintenance or repair of that portion of the premises which is not owned solely by the developer; or, [¶] b. The developer's membership in the

4

Association.  [¶]  However, the insurance afforded with respect to the developer does not apply to liability for acts or omissions as a developer."

C. *California Capital's Policy*

California Capital issued a commercial property general liability policy to Davlyn effective March 17, 2009, through March 17, 2012.  The policy lists Davlyn's "Business Description" as "Rented Condo Units."  A "Description of Premises" schedule lists the addresses of the Saddleback and Palm Lake properties (among others not at issue here).  A supplemental schedule detailing the premium basis identifies the total number of units, but not the specific units, owned by Davlyn in each building.  The policy lists seven units at Palm Lake and 61 at Saddleback, a number of which were sold over the course of the policy period.

Under the policy, California Capital agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies[,]" if the "'property damage' is caused by an 'occurrence'" that takes place during the covered period.  The policy defines "'occurrence'" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The California Capital policy specifies:  "This insurance applies only to . . . 'property damage' . . . arising out of:  [¶]  1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises including covered operations emanating from the premises and performed elsewhere."

California Capital's policy documents contain an exclusion for construction defect and development activity. However, the exclusion endorsement expressly states it does not apply to "premises described in this policy."[2] The California Capital policy exclusions also provide that "[t]his insurance does not apply to . . . 'Property damage' to: (1) Property you own, rent, or occupy." In other words, California Capital's policy insured Davlyn for property damages arising out of Davlyn's ownership, maintenance or use of the property, including construction and real estate development.

D. *The Underlying Construction Defect Actions and Equitable Contribution Actions*

In August 2010, the Palm Lake HOA sued Davlyn and several other affiliated developer entities and individuals for construction defects. The complaint alleged Davlyn participated "in the work of developing, designing, converting, constructing, servicing, marketing and/or selling of the Subject Property[.]"

---

[2]    In relevant part, the exclusion states:

"The insurance as provided under this policy does not apply to 'BODILY INJURY,' 'PROPERTY DAMAGE,' 'PERSONAL INJURY,' 'CONTRACTUAL LIABILITY' (including liability arising out of 'INCIDENTAL CONTRACT') or 'ADVERTISING INJURY,' arising out of or in any way connected with any of the following operations performed by or for, or at the direction of any 'INSURED': (1) CONSTRUCTION; (2) SUBCONTRACTING; (3) DEVELOPING ; (4) REAL ESTATE; (5) INVESTMENT.

[¶]

"**PREMISES DESCRIBED IN THIS POLICY ARE NOT SUBJECT TO THIS EXCLUSION.**" (Emphasis in original.)

The complaint defined the "Subject Property" as the real property tract of the complex and "all buildings and improvements thereupon." The Palm Lake complaint alleged a variety of design, construction, and servicing issues with "the Subject Property's residences and common areas" such that, among other things, "the Subject Property's residences and the common areas, at all material times after construction, were not merchantable quality nor fit for their ordinary purposes," and that "these conditions appear in and affect both the Subject Property's residences and the Subject Property's common areas." The complaint included a cause of action for negligent misrepresentation "during the course of marketing and selling the residential units in the Subject Property," including "[w]hile developing, designing, converting, constructing, servicing, marketing and/or selling residential units in the Subject Property."

In June 2012, the Saddleback HOA sued Davlyn and the affiliated developers for construction defects. The complaint alleged Davlyn and the other developer defendants "were the builders, developers and contractors that developed, designed, converted, constructed, serviced, marketed and sold the Subject Property, including all of its residential units and common areas." The complaint defined the "Subject Property" as the real property tract of the complex and "all buildings and improvements thereupon." As with the Palm Lake action, the Saddleback complaint alleged a variety of design, construction, and servicing issues such that, among other things, "the Subject Property's residences and common areas, at all material times after construction, were not of merchantable quality nor fit for their ordinary purposes," and alleged "these conditions appear in

7

and affect both the Subject Property's residences and the Subject Property's common areas." The complaint included a cause of action for negligent misrepresentation "[w]hile developing, designing, converting, constructing, servicing, marketing and/or selling residential units in the Subject Property." The complaint attached a "Preliminary Defect List" exhibit detailing the alleged defects in common areas and residential areas including damage to private decks and tub/shower units, attics, cabinets and countertops, exterior walls, and interior floors, walls, and ceilings.

The Palm Lake and Saddleback complaints both alleged that, pursuant to the CC&Rs, ownership of each individual unit included an undivided fractional fee interest in the common areas of the property.

Thus, both complaints alleged Davlyn, as owner, developer, and manager of the properties, had engaged in exactly the activities for which the California Capital policy insured Davlyn—causing damage to the properties (including the common areas) with negligent construction and development of the properties, and "using" the properties as the owner to negligently operate, maintain, market, and sell them, among other covered allegations.

Farmers defended Davlyn in the Palm Lake action and paid $320,119.08 in defense fees and costs and $1,050,000 in settlement. Truck defended Davlyn in the Saddleback suit and paid $44,534.74 in defense fees and costs and $1.5 million in settlement.

In May 2014, Truck sued California Capital for equitable contribution with regard to the Saddleback action and filed the operative Second Amended Complaint in September 2015. Truck

and Farmers filed Case No. BC550171 against its insureds and for equitable contribution against California Capital pertaining to the Palm Lake condominium conversion development project in June 2014. On June 30, 2015, California Capital issued a denial of coverage letter for the Palm Lake action, taking the position that its policies did not cover the conversion and excluded construction defects. The court consolidated the cases into a single proceeding.

E. *Summary Adjudication on Duty To Defend*

In April 2019, the trial court ordered the parties "to file Cross-Motions for Summary Adjudication as to the duty to defend and defense costs" in the Palm Lake and Saddleback lawsuits and ordered that they could later file motions for summary adjudication as to the duty to indemnify and indemnity costs. The parties filed competing motions for summary adjudication on whether California Capital had a duty to defend the Palm Lake and Saddleback actions. On October 22, 2019, the trial court granted Respondents' motion for summary adjudication and denied California Capital's motion, finding California Capital had a duty to defend Davlyn in the underlying lawsuits.

In so doing, the trial court rejected California Capital's contention that the Saddleback and Palm Lake complaints alleged damage only to common areas and not to individual units. The court found "both the Palm Lake and Saddleback actions involve 'property damage' to individual units and common areas of the two properties. . . . Both actions allege that ownership of individual units included ownership of a share of the common areas." Thus, "[b]ecause the individual units owned by Davlyn allegedly suffered property damage, as did the co-owned common

9

areas, a potential for coverage existed" under the policies covering units in the Palm Lake and Saddleback properties, which "provide that California Capital would pay those sums that Davlyn becomes legally liable to pay because of 'property damage' to which the insurance applies, if the 'property damage' is caused by an 'occurrence' and occurs during the policy period." Accordingly, the court concluded Respondents "established a prima facie case of a <u>possibility</u> of coverage under California Capital's policies," shifting the burden to California Capital to show that its policies could not possibly cover Davlyn's alleged actions (underlining in original).

The trial court then determined that California Capital failed to meet its burden to establish the absence of coverage for the underlying lawsuits under its policies. The court held:

> "By its plain language, the policy covers occurrences at the Palm Lake and Saddleback properties, and any property damage that arises within the policy period. Both underlying complaints alleged property damage to common areas and individual units.
>
> [¶]
>
> "As a result, during the California Capital policy periods, Davlyn was involved in service, marketing, and sale of both the individual units and the corresponding portions of the common areas. Such activities are clearly consistent with the 'ownership, maintenance and use' of the properties covered under the policies, and which allegedly were performed in a

10

manner which caused damage to the underlying plaintiffs.  In addition, the underlying plaintiffs alleged that the negligent activities, including service, marketing, and sale, resulted in property damage to individual units.

[¶]

"Moreover, from the plain language of the policy, even latent property damage that occurs within the policy period—as a direct result of condominium conversion—would still be covered under the policy."

The court found Respondents were entitled to equitable contribution from California Capital for defense of the Palm Lake and Saddleback lawsuits, ruling that both Respondents and California Capital had insured the "same risk" because the parties' policies all insured Davlyn for "ownership, maintenance, or use" of the Palm Lake and Saddleback properties.  The court found California Capital failed to establish the absence of actual coverage under its policy, stating:

"Here, Plaintiffs and California Capital insured the same risk.  Plaintiffs expressly insured Davlyn for property damage arising from the 'ownership, maintenance, or use' of the Palm Lake and Saddleback properties.  Under the plain language of its policy, California Capital also insured Davlyn for 'ownership, maintenance, or use' of the Palm Lake and Saddleback properties.

11

[¶]

"As noted above, Plaintiffs have established a prima facie case of a potential for coverage. The burden shifts to California Capital to show an absence of coverage. As with the duty to defend, California Capital has not met its burden.

[¶]

"Accordingly, Plaintiffs are entitled to judgment as a matter of law as to the issue of equitable contribution."

The court ultimately ordered California Capital to pay Respondents $162,448.00 in defense fees and costs for the Palm Lake action and $242,267.37 in defense fees and costs for the Saddleback action.

F. *Summary Adjudication on Duty To Indemnify*

On September 21, 2020, Respondents moved for summary adjudication as to California Capital's duty to indemnify Davlyn. The trial court granted Respondents' motion on December 7, 2020, concluding that California Capital had a duty to indemnify Davlyn in the underlying actions and Respondents were entitled to equitable contribution from California Capital because it insured Davlyn for the same risk.

The court found Respondents expressly insured Davlyn for property damage arising from the "ownership, maintenance, or use" of the Palm Lake and Saddleback properties, as did

12

California Capital under the plain language of its policy insuring Davlyn for "ownership, maintenance, or use" of the Palm Lake and Saddleback properties. The court ordered California Capital to contribute $500,000 to Respondents for the Saddleback settlement and $262,500 for the Palm Lake settlement.

The trial court entered judgment on January 12, 2021, and denied California Capital's subsequent motion for a new trial on March 26, 2021.

This appeal timely followed.

## DISCUSSION

A. *Standard of Review*

"'A party is entitled to summary adjudication of a cause of action if there is no triable issue of material fact and the party is entitled to judgment as a matter of law.'" (*Cornell v. Berkeley Tennis Club* (2017) 18 Cal.App.5th 908, 924-925; accord, *Syngenta Crop Protection, Inc. v. Helliker* (2006) 138 Cal.App.4th 1135, 1154; Code Civ. Proc., § 437c, subds. (c), (f).) "[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) "Summary adjudication works the same way as summary judgment, "except it acts on specific causes of action or affirmative defenses, rather than on the entire complaint." (*Oroville Hospital v. Superior Court* (2022) 74 Cal.App.5th 382, 398.) A plaintiff moving for summary judgment need only "prove [] each element of the cause of action." (*Aguilar,* at p. 853; Code Civ. Proc., § 437c, subd. (o)(1).) If the moving party satisfies its initial burden, the

13

burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact exists. (*Cornell,* at p. 925.) The ruling on a summary adjudication motion concerns the legal effect of undisputed facts and whether the material facts are truly undisputed. We review the record de novo, liberally construing the evidence in favor of the party opposing summary adjudication and resolving doubts concerning the evidence in favor of that party. (*Salas v. Sierra Chemical Co.* (2014) 59 Cal.4th 407, 415; *Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.) If summary adjudication was properly granted on any ground, we affirm "regardless of the trial court's stated reasons." (*Syngenta Crop Protection, Inc.,* at p. 1155.)

Interpretation of an insurance policy is a question of law, including whether a particular policy provides a potential for coverage and duty to defend. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 (*Waller*).)

Equitable contribution is a rule of equity subject to the trial court's discretion. (*Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1998) 65 Cal.App.4th 1279, 1293.) Some courts hold that, to the extent the trial court exercised discretion in granting summary judgment or summary adjudication, the standard of review on appeal is abuse of discretion. (See, e.g., *GuideOne Mutual Ins. Co. v. Utica National Ins. Group* (2013) 213 Cal.App.4th 1494, 1501 [equitable contribution]; *Mills v. Forestex Co.* (2003) 108 Cal.App.4th 625, 639-640 [equitable tolling and estoppel]; *Centennial Ins. Co. v. United States Fire Ins. Co.* (2001) 88 Cal.App.4th 105, 111 [equitable contribution]; see also *Dieden v. Schmidt* (2002) 104 Cal.App.4th 645, 654 [equitable subrogation].) Other courts hold review is de novo, in

accordance with the ordinary standard of review on appeal following summary judgment or summary adjudication. (See, e.g., *JP Morgan Chase Bank, N.A. v. Banc of America Practice Solutions, Inc.* (2012) 209 Cal.App.4th 855, 859 [equitable subrogation]; *State Farm General Ins. Co. v. Wells Fargo Bank, N.A.* (2006) 143 Cal.App.4th 1098, 1105 [same].) We need not decide which standard of review applies to the trial court's ruling that Respondents are entitled to equitable subrogation in this case, because our conclusion does not change whether we review the ruling de novo or for abuse of discretion.

B. *California Capital Had a Duty To Defend Davlyn in the Palm Lake and Saddleback Lawsuits*

California Capital asserts it had no duty to defend the insureds because it only insured Davlyn for property damage arising out of Davlyn's "use" of its individually owned residential condominium units. Davlyn contends, and the trial court found, that California Capital reads the insurance policies (and the underlying complaints) too narrowly. Davlyn has the better argument.

"[W]hether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy." (*Waller, supra,* 11 Cal.4th at p. 19.) In an equitable contribution action between insurers, "the inquiry is whether the nonparticipating coinsurer 'had a *legal obligation* . . . to provide [a] defense [or] indemnity coverage for the . . . claim or action prior to [the date of settlement],' and the burden is on the party claiming coverage to show that a coverage obligation arose or existed under the coinsurer's policy." (*Safeco Ins. Co. of America v. Superior Court*

15

(2006) 140 Cal.App.4th 874, 879 (*Safeco*).) "To prevail, the [settling insurer] must prove the existence of a *potential for coverage,* while the [nonparticipating] insurer must establish *the absence of any such potential.* In other words, the [settling insurer] need only show that the underlying claim *may* fall within policy coverage; the [nonparticipating] insurer must prove it *cannot.* (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 300 (*Montrose*).)

The underlying Palm Lake and Saddleback complaints allege that the defective "conditions appear in and affect both the Subject Property's residences and the Subject Property's common areas." The complaints defined "Subject Property" broadly as "all buildings and improvements" on the property. The Saddleback and Palm Lake actions alleged damage to residential units, such as the alleged damage around tub/shower units in the Saddleback complaint. The complaints also alleged negligent misrepresentation while "servicing, marketing and/or selling residential units." The complaints also alleged, and the formation documents confirm, that ownership of each individual unit includes an undivided fractional fee interest in the common areas of the property.

These allegations directly implicate the relevant policy language. For example, both policies require California Capital to cover losses due to "property damage" caused by an "occurrence" arising from "ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises." California Capital focuses on the word "use," to suggest that Davlyn did not "use" the individually owned units. But the scope of coverage extends far broader than

16

that.[3]  It includes "ownership and maintenance."  It also extends to the "premises."  California Capital asserts, without support in the policy language itself, that "premises" means only the individual units owned by Davlyn.  The policy does not define the term "premises," but the Description of Premises schedule and supplemental schedule identify the addresses of the Saddleback and Palm Lake properties and the total number of units owned by Davlyn in each building.[4]  Taking the policy language as a

[3]  California Capital cites a series of inapposite (mostly vehicle) cases in support of its argument that the underlying claims do not implicate Davlyn's "use" of the premises.  For example, *State Farm Mutual Auto. Ins. Co. v. Partridge* (1973) 10 Cal.3d 94, involved the negligent handling of a weapon in a car, but the negligence did not extend to the "use" of the car.  As another example, *State Farm Mutual Automobile Ins. Co. v. Grisham* (2004) 122 Cal.App.4th 563 involved a driver whose dog jumped out of his truck and bit a passerby.  Again, the liability centered on the supervision of the dog, not the use of the vehicle for purposes of invoking the automobile insurance coverage.  These cases provide no guidance here, where the underlying complaints assert damage from Davlyn's actual use—and operation and maintenance—of the premises, including the common areas.

[4]  California Capital argues that "premises" cannot mean the entire property because premises are "occupied by people" and Davlyn had only an "inchoate [unoccupied] 'interest in the common areas.'"  California Capital cannot redefine premises to exclude the common areas in this way.  Premises refers to "[a] house or building, along with its grounds; esp., the buildings and land that a shop, restaurant, company, etc. uses." (*Black's Law Dictionary* (11th ed. 2019).)  The HOA formation documents, the policy itself, and the allegations in the underlying complaints all refer to the common areas as part of the premises.

whole, the policy clearly encompasses the buildings on the property, including the units and common areas. Indeed, having referenced both the individual units and the entire property, the policy contains no language limiting coverage to the individual units, nor does the policy exclude any common areas or other portions of the two properties from coverage. Moreover, although the June 2015 denial letter relied on a policy endorsement that barred coverage for construction, subcontracting, developing, real estate, or investment, the policy further states: "**PREMISES DESCRIBED IN THIS POLICY ARE NOT SUBJECT TO THIS EXCLUSION.**" Finally, the coverage extends broadly to "operations necessary or incidental" to the premises.

Based upon the plain language of the policies and the allegations in the Saddleback and Palm Lake actions, Respondents have shown the claims may "fall within the scope of coverage." (*Montrose, supra,* 6 Cal.4th at p. 300.) The complaints alleged damage to both the residential units and the common areas arising from Davlyn's "ownership, maintenance or use" of those areas. The policies did not exclude the common areas from the "premises," as the denial of coverage letter asserted, but even if they did, the complaints alleged that ownership of the individual units included an undivided interest in the Common

18

Area.[5]  As a result, California Capital cannot meet its burden to prove an absence of actual coverage.[6]

---

[5]    The complaints' allegations are supported by Civil Code section 4125, subdivision (b), which defines a "condominium" as "an undivided interest in common in a portion of real property coupled with a separate interest in space called a unit."  (See *Marina Green Homeowners Assn. v. State Farm Fire & Casualty Co.* (1994) 25 Cal.App.4th 200, 204, citing Civ. Code former § 1351, subd. (f), [explaining "Each unit, defined as an 'interest in space,' is separately owned.  The structure itself is owned, not individually, but jointly."].)  Thus, Davlyn's ownership of condominium units provides an additional basis for potential coverage of damage alleged inside the units and in common areas.

[6]    California Capital argues this reading of the policies ignores the "intent" of the policy language, evidence of which it supplies through, among other things, the deposition testimony of Davlyn's insurance broker.  Courts must preliminarily "consider all credible evidence offered to prove the intention of the parties." (*Oakland-Alameda County Coliseum Authority v. Golden State Warriors, LLC* (2020) 53 Cal.App.5th 807, 817.)  But this extrinsic evidence is only admissible if the contract language is "'fairly susceptible'" of the interpretation promoted by the extrinsic evidence and if it does not "detract from, or vary the terms of a written contract."  (*Pacific Gas & Electric Co. v. G.W. Thomas Drayage & Rigging Company, Inc.* (1968) 69 Cal.2d 33, 39-40; accord, *Oakland-Alameda County Coliseum Authority,* at p. 817.)  Here, California Capital offers an "interpretation" of the policy that contradicts, and certainly "var[ies]," the policies' plain meaning, rendering its parol evidence inadmissible.

C. *Respondents Proved California Capital Had a Duty To Indemnify*

Respondents argue the trial court's ruling in their favor on the duty to defend means it also wins on the issues of duty to indemnify and for equitable contribution. One does not necessarily flow from the other: "the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded." (*Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal.4th 1076, 1081). Also, because an insurer has a duty to defend whenever there is a potential for coverage, it may ultimately have no duty to indemnify if the "judgment is for damages not covered under the policy." (*Stonewall Ins. Co. v. City of Palos Verdes Estates* (1996) 46 Cal.App.4th 1810, 1835.) However, these "contingencies are inapplicable" where the trial court decides the issue of actual coverage "*after* resolution of the underlying case." (*Ibid*.) Instead, "in an action for equitable contribution by a settling insurer against a nonparticipating insurer, the settling insurer has met its burden of proof [on the duty to indemnify] when it makes a prima facie showing of coverage under the nonparticipating insurer's policy—the same showing necessary to trigger the recalcitrant insurer's duty to defend—and that the burden of proof then shifts to the nonparticipating insurer to prove the absence of actual coverage." (*Safeco, supra,* 140 Cal.App.4th at p. 881.) Thus, "[w]hen a duty to defend is shown, nonparticipating coinsurers are presumptively liable for both the costs of defense and settlement" unless they prove the absence of actual coverage. (*Id.* at p. 880.) "The settling insurer does not have to prove actual coverage."

(*Axis Surplus Ins. Co. v. Glencoe Ins. Ltd.* (2012) 204 Cal.App.4th 1214, 1223.)

We already have explained that California Capital failed to show the absence of actual coverage. To establish the right to indemnity, Respondents need show no more in these circumstances. However, the trial court found, and we agree, that California Capital did insure Davlyn for the property damage alleged in the underlying complaints. In other words, actual coverage. California Capital insured Davlyn for property damage arising from Davlyn's "'ownership, maintenance, or use'" of the "premises," which—as we explain above—included both individually owned units and common areas. The underlying complaints allege damage arising from the conduct insured by California Capital, e.g., "designing, developing, building, construction, repairing, remodeling, maintaining, installing, manufacturing, supplying, and/or selling" the insured property during the policy period. Davlyn marketed, sold, maintained, and otherwise caused (according to the complaints) damage to these properties. Accordingly, the trial court properly found California Capital failed to carry its burden and that Respondents established a right to indemnity.

D. *Respondents Were Entitled to Equitable Contribution*

Having established that California Capital had a duty to defend and to indemnify, Respondents may recover a pro rata portion of the sums they expended to defend and settle the underlying actions. Where a settling co-insurer (here, Respondents) has "undertaken the defense or indemnification of the common insured," but "without any participation" from another insurer that has the obligation "to indemnify or defend

the same loss or claim," the first insurer may recover the portion it paid beyond its own share. (*Fireman's Fund Ins. Co. v. Maryland Casualty Co., supra,* 65 Cal.App.4th at p. 1293.) "Equitable contribution permits reimbursement to the [settling] insurer that paid on the loss for the excess it paid over its proportionate share of the obligation, on the theory that the debt it paid was *equally and concurrently* owed by the other insurers and should be shared by them pro rata in proportion to their respective coverage of the risk." (*Ibid.*)

In addition, California Capital may not now complain about the costs of defense or indemnity. When a co-insurer refuses to participate in the underlying action, it waives the right to challenge those sums. (*Safeco, supra,* 140 Cal.App.4th at p. 880; *St. Paul Mercury Ins. Co. v. Mountain West Farm Bureau Mutual Ins. Co.* (2012) 210 Cal.App.4th 645, 662.) This rule applies particularly where the participating insurer has settled the underlying action. "By settling, the parties avoid the cost and uncertainty of litigation. The settlement and the amount of the settlement are thus presumptive evidence of the insurer's liability and the amount of liability." (*Axis Surplus Ins. Co. v. Glencoe Ins. Ltd., supra,* 204 Cal.App.4th at p. 1224.)

Given California Capital's duties to defend and to indemnify Davlyn, Respondents were entitled to equitable contribution for a portion of their defense fees and costs and settlement payments. Here, the parties insured the "same risk"—property damage to individual units and common areas—because the parties' policies all insured the same insured, Davlyn, for "ownership, maintenance, or use" of the Palm Lake and Saddleback properties. California Capital's assertion that its policies do not cover the same risk as Respondents' policies

22

(because Davlyn's "use" of the property as property manager was different than as rental unit manager) is contradicted by the express, much broader, policy language.

California Capital's exclusion for construction defect and development activity expressly does not apply to "premises described in this policy," thus it does not affect our analysis.

### E. *The Owned Property Exclusion Does Not Apply*

Finally, California Capital argues that its policies' "owned property" exclusion for damage to property owned or rented by its insureds bars equitable contribution. This exclusion would apply if California Capital's coverage extended only to damage of property owned by Davlyn. However, as the trial court found, the underlying complaints did not limit the assertion of damage to property owned by Davlyn; rather, the complaints alleged damage to property maintained and used by Davlyn (including the common areas and residential units). Moreover, as the court also noted, the polices do not specify the units owned by Davlyn for purposes of applying an owned property exclusion. That distinction does not appear in the policies or in any evidence submitted by California Capital below or here. For this reason alone, the owned property exclusion argument fails. Respondents also argue (and the trial court found) that California Capital waived the owned-property exclusion. Given our conclusion that the owned-property exclusion does not bar coverage or indemnity, we decline to decide whether a nonparticipating insurer waives a coverage exclusion if it fails to raise the exclusion in a denial letter to, and in subsequent litigation with, a settling insurer. (See *Waller, supra*, 11 Cal.4th at p. 31 [outlining test for waiver as between insurer and insured].)

23

## DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs on appeal.


HOWARD, J.*


We concur:



PERLUSS, P. J.



SEGAL, J.

---

*     Judge of the Marin County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.